UNITED STATES, Appellee,

v.

Robert J. HALE, Jr., Private, U.S. Army, Appellant.

No. 58,092.

CM 8600564.

U.S. Court of Military Appeals.

July 13, 1989.

For Appellant: *Colonel John T. Edwards, Lieutenant Colonel Joel D. Miller, Major Marion E. Winter, Captain James J. McGroary* (on brief); *Captain William J. Kilgallin.*

For Appellee: *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Byron J. Braun* (on brief); *Captain Susan E. Fine.*

*Opinion of the Court*

EVERETT, Chief Judge:

On mixed pleas, Private Hale was found guilty by a military judge sitting alone as a general court-martial of two specifications of wrongful appropriation and one specification of dishonorable failure to pay a just debt, in violation of Articles 121 and 134 of the Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The sentence adjudged was a bad-conduct discharge, confinement for 9 months, and total forfeitures. The convening authority approved the sentence; and the Court of Military Review affirmed the findings and sentence in a short-form opinion. We granted review to determine whether a conviction of wrongfully appropriating a car on February 3, 1986 (specification 2 of Charge I), was consistent with a conviction for failing to pay a debt of 310 Deutsche

Marks which became due and payable on February 7, 1986, for rental of that same automobile (specification of Charge II).

### A

On January 31, 1986, Hale rented a 1985 Volkswagen sedan from the Avis Rental Agency at Giessen, Federal Republic of Germany. The rental was at a special weekend rate, and appellant made a down payment of 300 Deutsche Marks. He was scheduled to return the car on February 3. On February 7, after Hale had failed to turn in the vehicle at the scheduled time, Avis officials contacted the military police about the missing automobile. Thereafter, Hale was brought to an Avis office to discuss the situation. Initially, he denied having ever rented the vehicle or having it in his possession. Ultimately, he admitted to an investigator that he had rented the Volkswagen and still had it. Shortly thereafter, the automobile was returned to Avis.

### B

■ Even though appellant rightfully obtained possession of the vehicle, his retention of it beyond the period contemplated by the rental contract was a wrongful withholding from the possession of the owner within the meaning of Article 121 of the Uniform Code. *Cf. United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) (interpreting the Dyer Act); *United States v. Hull,* 437 F.2d 1 (5th Cir.1971). Therefore, the conviction for wrongful appropriation was sustained by the evidence.

■ Hale's denial that he had ever rented the Volkswagen or that the signature on the rental contract was his constituted dishonorable conduct. Since this dishonorable conduct was part of an attempt by him to prevent Avis from collecting payment due to it for appellant's use of the rented car, the evidence also was sufficient to sustain a conviction for dishonorable failure to pay a just debt, in violation of Article 134.

### C

■ The issue, however, is whether these two convictions can co-exist after trial. Sometimes evidence that might sustain a conviction for either of two crimes will not sustain convictions for both offenses at the same time. For example, an accused may not be found guilty of larceny and receiving stolen property, if the same property is involved in each offense. *United States v. Cartwright,* 13 MJ 174 (CMA 1982). There also are instances when, even though the elements of two crimes are not mutually exclusive, we have concluded that Congress never intended for an accused to be convicted of both offenses as a result of the same transaction. Thus, in *United States v. Hickson,* 22 MJ 146 (CMA 1986), we decided that Congress did not intend that an accused be convicted of committing adultery as a result of the same sexual intercourse which resulted in his conviction of rape.

If a servicemember wrongfully takes property from an owner, he may be punished for larceny or for wrongful appropriation—depending on his intent at the time of taking. *See* Art. 121. Also the taking creates a civil liability in tort for the owner's loss of use of his property. We are convinced, however, that Congress never intended that a servicemember who was convicted of larceny or of wrongful appropriation could also be convicted of failing to pay the owner the obligation that had been incurred because of the owner's loss of use of his property. *Cf. United States v. Hickson, supra.*

A bailee to whom property has been entrusted but who fails to return it to the owner at the appointed time is criminally liable under Article 121 for wrongful appropriation or for larceny—again depending on his intent. He also is civilly liable to the owner for loss of use of the property which was withheld. Just as with a wrongful taking, *see United States v. Norris,* 2 USCMA 236, 8 CMR 36 (1953), we do not believe that Congress intended that a servicemember who is convicted under Article 121 for wrongfully withholding property

can be separately convicted under Article 134 for dishonorably failing to pay the owner for the loss of the property that resulted from the wrongful appropriation.

Hale rented the Volkswagen from the Avis rental agency under a rental contract which called for its return at a scheduled date and prescribed a rent for retention of the automobile thereafter. Thus, instead of an unliquidated obligation to repay an owner for his loss of use if the rental property is held beyond the appointed time, here the rental contract prescribed the amount of indebtedness incurred when the car was held over.

Apparently, the Government is claiming that, under the terms of this rental contract, a debt existed for Hale's retention of the car after February 3, the scheduled date for its return, and that failure to pay this debt according to the terms of the rental contract was punishable under Article 134. This contention, however, is somewhat at odds with the premise under which Hale was convicted of wrongful appropriation—namely, that he retained possession of the car contrary to the contract, rather than pursuant to it.

The common law recognized a doctrine of "waiver of tort" whereby, under certain circumstances, a victim could claim damages under an implied contract, rather than for a tort. *See Black's Law Dictionary* 1418 (5th ed.1979). In accord with this doctrine, the owner of property which had been taken could claim under an implied contract that he be reimbursed for his loss of use, rather than in tort. This might be an advantageous course to pursue because the measure of damages might be different in an action based on contract or a different statute of limitations might apply. However, in such situations, the victim could not simultaneously recover on both a contract theory and a tort theory.

Similarly, the Government would be free to ignore the wrongfulness of the taking and prosecute Hale on the theory that, under the rental contract, he owed the Avis rental agency for its loss of use of the Volkswagen which he had withheld after the date when it was scheduled for return. However, the Government was not free, at the same time, to convict Hale for wrongfully appropriating the car because he had breached the contract by not returning the car on the scheduled date.

If a different view were taken, the results would be strange. For example, a servicemember who stole a car could only be prosecuted under Article 121 for larceny; but a servicemember who did not return a rented car on the scheduled date might be convicted under both Article 121 for larceny or wrongful appropriation and under Article 134 for not paying the amount required by the contract to be paid for retaining possession of the car beyond the scheduled date for turning it in. Moreover, this dual liability might even hinge on whether the language of the rental contract purported to create an indebtedness for a holdover period beyond the scheduled date for turning in the car.

### D

■ The foregoing discussion applies only when the debt on which the Article 134 charge is based arises out of the accused's retention of possession of the rented property *after* it has been wrongfully appropriated. On the other hand, if a car is rented, and under the rental contract the renter incurs indebtedness to the rental agency which he fails to pay, and if later, the renter violates the rental contract by not returning the automobile on a prescribed date, he can be convicted both for wrongful appropriation and for dishonorable failure to pay a just debt. Congress never intended that the criminal liability for a dishonorable failure to pay a just debt which already has been incurred for the use of rented property be altered in any way because, after that debt has been incurred, the renter misappropriates the property.

For example, if Hale had been convicted of dishonorably failing to pay a just debt owed to the Avis rental agency because, pursuant to the rental contract, he had used the Volkswagen between January 31

and February 3—when it was to be returned to Avis—he could be convicted for that offense, even though he wrongfully appropriated the car on February 3. Under these circumstances, Congress never intended that the Government be precluded from imposing punishment both for the dishonorable failure to pay a just debt and for the wrongful appropriation.

As we read the record, the facts of the present case do not fit this pattern. When he rented the car, Hale was required to make a downpayment of 300 Deutsche Marks. Under the weekend special rate, this downpayment apparently would have covered his rental of the car through the date—February 3—when he was required by the contract to return it. Furthermore, as we read the record, the indebtedness which Hale dishonorably failed to pay was incurred only with respect to the period of time *after* February 3.

**E**

Under these circumstances, the conviction for the dishonorable failure to pay Avis cannot stand. Since the military judge held that Hale not only could be convicted of both offenses but also could be separately punished for both, appellant is entitled to reassessment of the sentence adjudged. *Cf. United States v. Sales*, 22 MJ 305 (CMA 1986).

The decision of the United States Army Court of Military Review is reversed as to Charge II and its specification and the sentence. The findings of guilty thereon are set aside and that Charge is dismissed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to that court for reassessment of the sentence based on the remaining findings of guilty.

Judges COX and SULLIVAN concur.