**UNITED STATES**

v.

**Airman Steven L. BODDIE, FR047–64–3332 United States Air Force.**

**ACM 32401.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Aug. 1996.

Decided Aug. 26, 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Major Ray T. Blank, Jr.

Appellate Counsel for the United States: Major LeEllen Coacher and Major Allen G. Erickson.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

Following his plea of guilty to larceny, attempted larceny, and writing dishonored checks, a general court-martial consisting of members sentenced appellant to a bad-conduct discharge, 3 months unconfined hard labor, and reduction to airman basic. The convening authority disapproved the finding of guilty to one of the bad checks and the unconfined hard labor, but otherwise approved the findings and sentence as adjudged.

This case first arrived before us with a lone assignment of error—the inevitable *ex post facto* claim that we decided adversely to appellant's arguments in *United States v. Pedrazoli*, 45 M.J. 567 (A.F.Ct.Crim.App. 1997). We returned the case for briefing of two specified issues:

### I

WHETHER THE UNIQUE CHARACTERISTICS OF A RENT–TO–OWN CONTRACT GIVING RISE TO APPELLANT'S POSSESSION OF THE AL-

LEGED OBJECTS OF LARCENY, IN CONJUNCTION WITH HIS STATED INTENTION DURING THE PROVIDENCE INQUIRY TO PAY OFF THE RENT–TO–OWN CONTRACTS AT THE TIME HE SOLD THE ITEMS, RENDERED HIS PLEA TO LARCENY OF THOSE ITEMS IMPROVIDENT.

## II

WHETHER TRIAL COUNSEL'S ARGUMENT DURING SENTENCING WHICH ERRONEOUSLY AND REPEATEDLY DEPICTED APPELLANT AS A BARRACKS THIEF, WHEN THE ACTUAL CHARGED OWNER OF THE ALLEGEDLY STOLEN ITEMS WAS COLORTYME RENT–TO–OWN, AMOUNTED TO PLAIN ERROR

We answer the first specified issue in the affirmative, the second in the negative, and shall reassess the sentence in our decretal paragraph.

### Facts

Married right after basic training, and with a new baby, appellant's first assignment was to Laughlin Air Force Base (AFB), Texas, as a security policeman. Anxious to furnish a new apartment for his wife and child, who for the time being continued to reside in Connecticut, and with the regrettable furnishing priorities wont to youth, appellant went to ColorTyme Rent–To–Own (Color-Tyme) and entered into a rent-to-own contract for a big-screen color television, a stereo, a couch, chair, two tables, and a lamp. The rent-to-own contract is just what its name implies. One assumes a possessory interest in non-titled chattel, but not an ownership proprietary interest until the rental contract is discharged. According to the testimony and documents in the record, Color-Tyme's contract was no different, specifying that a customer had no authority to sell or even surrender possession of ColorTyme's goods until the completion of the rental contract.

We resist the temptation to explore the fiscal wisdom of such transactions, noting only that according to the testimony, the duration and amount of payments suggest that "purchase" of ColorTyme's things, if accomplished, came dearly. According to the ColorTyme contracts, the TV was valued at $1905.75, the stereo at $1348.50, and the furnishings came to $1648. However, the total outlay, exclusive of tax and fees, for the 96 to 104 weekly payments came to: for the TV, $3519.12; the stereo, $3350.85; and the furniture, $2399.04. In short order, appellant found that he could not meet the payments along with his other bills, and hit upon the idea of selling the TV, stereo, and furniture to finance his bills over the short-term. He succeeded in selling the TV for $700 to a fellow airman, and the stereo for $600 to another. A prospective purchaser of the furniture and lamps backed out, hence the attempted larceny specification.

There things might have remained. Appellant continued to make payments to ColorTyme for a while, but in short order found himself behind again. All the while, appellant, in deepening financial distress, was papering the town of Del Rio with bad checks. It was while being counseled by his squadron commander for these checks and his generally deplorable financial situation that he disclosed what he had done with ColorTyme's stuff. This led to the Security Police, apparently oblivious to the significance of whether appellant's purchasers might be bona fide purchasers for value without notice, seizing the goods from the purchasers and returning them to ColorTyme.

### I. Providence of Pleas of Guilty to Larceny and Attempted Larceny

Under Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921, the elements of larceny are:

(a) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(b) That the property belonged to a certain person;

(c) That the property was of a certain value, or of some value; and

(d) That the taking, obtaining or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.

Wrongful appropriation, on the other hand, has identical elements to the above, save only that the word "permanently," which appears twice in element (d), is replaced with "temporarily." MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 46b (1995 ed.) The question before us is whether, under the circumstances of the transactions here, appellant entertained the intent at the time of the alleged larceny to permanently or temporarily deprive ColorTyme of their legal interests in the property.

■ We begin by acknowledging that this is a guilty plea. Whether or not we believe that the government could have proved the requisite intent for larceny should appellant have litigated the charge is unimportant. *United States v. Faircloth*, 45 M.J. 172 (1996). It is rather for us to decide whether the plea to larceny was provident—that is, whether there is a substantial basis in law and fact for rejecting the plea of guilty. *Id.* at 174 (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)).

■ Initially, appellant said all of the right things during the providence inquiry. He admitted orally, and in a stipulation of fact, that he had the requisite intent. However, the military judge probed further, indirectly asking how appellant expected to get away with selling ColorTyme's property.

MJ: Okay. So you weren't going to just take that money and pay off the rental contract, in which case it would have been yours, or were you doing that?

ACC: What I—it's kind of two-parted. What I intended on doing was selling the furniture along with the TV and stereo to pay off the rest of my bills so that I'd just have the ColorTyme bill to pay. That way I wouldn't have to worry about any other bill upcoming. *And then I would just continue to pay the ColorTyme until it was actually mine and then they would never know.*

(Emphasis added.) It must be recalled that appellant had a valid possessory interest in the chattel so long as he continued to make the payments. Without a doubt, selling property he did not (yet) own to a third-party was a breach of contract with ColorTyme. But a breach of contract, even when it amounts to civil conversion, is legally distinct from larceny.

Long ago we decided that the use of a rental car beyond the terms of the contract could not be the subject of larceny, but only of wrongful appropriation. *United States v. McCracken*, 19 C.M.R. 876 (A.F.B.R.1955). Despite its antiquity, that case was cited with approval in *United States v. Abeyta*, 12 M.J. 507 (A.C.M.R.1981), which disapproved a conviction for larceny of taxi services. (*Abeyta* would probably not withstand scrutiny today in light of *United States v. Antonelli*, 35 M.J. 122 (C.M.A.1992), and *Faircloth*, but for different reasons than are of concern here.)

■ The government's argument spends much of its attention on the wrong element, the wrongfulness of the taking, rather than the intent which accompanies that wrongful taking. Not every nonpermissive taking constitutes a larceny. *See, e.g., United States v. Harville*, 14 M.J. 270, 271 (C.M.A.1982) (citing *United States v. Hayes*, 25 C.M.R. 131, 133–34 (C.M.A.1958) (borrowing article without prior permission of owner not necessarily violation of Article 121)). There must also be the requisite criminal intent. *Id.*

Consistent with *McCracken*, the courts have commonly treated the wrongful withholding, or carrying over, of rented or borrowed property to be wrongful appropriation, not larceny. *See, e.g., United States v. Jones*, 35 M.J. 143 (C.M.A.1992); *United States v. Hale*, 28 M.J. 310, 311 (C.M.A.1989). In *Hale*, then Chief Judge Everett cautioned against blurring the sharp distinctions between contract and criminal law by converting civil derelictions into crimes. Hale had kept a rental car beyond the terms of the contract and had been convicted of its wrongful appropriation and of dishonorable failure to pay the rental contract for the holdover

period. This was, of course, a civil conversion, but whether Hale could be convicted of larceny or wrongful appropriation depended upon his *intent at the time of the taking,* a factor irrelevant to the common law tort of conversion. *Id.* at 311.

■ Even in a guilty plea, a matter which calls into question whether an accused has the requisite *mens rea* requires further exploration on the part of the military judge. *United States v. Thomas,* 39 M.J. 1078, 1079 (C.G.C.M.R.1994) (possibility of mistaken belief that rental company would have approved extension of contract held inconsistent with guilty plea to wrongful appropriation), *pet. denied,* 42 M.J. 89 (1995).

Returning to the case at bar, there is no question but that appellant's sale of property he did not own constituted a wrongful taking or withholding, even though so long as he made payments to ColorTyme he maintained valid possession. He was not permitted to alienate the property, for the obvious reason that such alienation impaired ColorTyme's ownership interest (ability to repossess). However, appellant raised a substantial matter in conflict with the providence of his pleas when he indicated that his intention, at the time he sold the property, was to continue to pay ColorTyme until their contract was discharged. Had he done so, of course, ColorTyme would have been perfectly content. Either way, that intention does not square with an intent to *permanently* deprive ColorTyme of its use or enjoyment of its property interest. We shall accordingly approve findings of wrongful appropriation and attempted wrongful appropriation in our decretal paragraph.

## II. Whether Argument of Trial Counsel Was Plain Error

■ Possibly because he considered ColorTyme was not a particularly sympathetic victim, trial counsel repeatedly depicted the two airmen who purchased ColorTyme's chattels from appellant as the victims. Appellant had, according to the prosecutor, "ripped off" fellow airmen, not just some "faceless individual out in the economy." This was not, as a matter of law, true; nor was it even true with reference to the charge sheet, which correctly showed ColorTyme to be the true owner of the property. As we said above, the airmen to whom appellant sold ColorTyme's property for all appearances were bona fide purchasers for value without notice (appellant did not reveal the nature of his interest in the property to his customers, and was at pains to mask evidence of ColorTyme's). The only reason they lost the property at all was because the security police seized it from them, thereby intervening in a civil relationship of ownership between the airmen and ColorTyme on behalf of the latter. Even at that, appellant had reimbursed both airmen by the time of trial. As it turned out, these two "victims" received the use and benefit of the property for a while without having to pay for it.

■ Therefore, trial counsel's argument was error. But defense counsel failed to object, so the question before us is, was it plain error? To succeed in a claim of plain error, an appellant must show (1) there was error; (2) such error was obvious; (3) that the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Johnson v. United States,* ⸺ U.S. ⸺, ⸺, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *United States v. Roberson,* 46 M.J. 826, 827 (A.F.Ct.Crim.App.1997) (f rev). Weighed against these standards, we find that, at most, appellant satisfies the first two elements. We therefore answer the second specified issue in the negative.

### Conclusion

The findings of Charge I, specifications 1 and 2, shall be amended to reflect conviction for wrongful appropriation, and not larceny, of the television set and the stereo system, respectively. The specification for Charge II shall be amended to read, "attempt to wrongfully appropriate" instead of "attempt to steal." As amended the findings are approved. Reassessing the sentence, we are satisfied, given the members' understanding of the actual transgressions by appellant, and further considering his considerable history of check abuse, that the amendment to the

specifications would not have affected the members' sentence, and that the sentence as approved is not inappropriately severe. Accordingly, the sentence as approved by the convening authority is affirmed.

Senior Judge PEARSON and Judge MORGAN, J.H., concur.