UNITED STATES, Appellant
and Cross–Appellee,

v.

Steven L. BODDIE, Airman, U.S.
Air Force, Appellee and
Cross–Appellant.

No. 97–5006.
Crim.App. No. 32401.

U.S. Court of Appeals for
the Armed Forces.

Argued March 23, 1998.

Decided Sept. 30, 1998.

For the Accused: *Major Ray T. Blank* (argued); *Colonel Douglas H. Kohrt* (on brief); *Captain Harold M. Vaught.*

For the United States: *Colonel Brenda J. Hollis* (argued); *Lieutenant Colonel Michael J. Breslin* and *Captain Mitchel Neurock* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, Airman (Amn) Boddie was convicted by general court-martial of larceny (2 specifications), attempted larceny, and writing bad checks (2 specifications), in violation of Articles 121, 80, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 880, and 934, respectively. The convening authority disapproved the finding as to one check out of four in one of the specifications of writing bad checks, and approved the bad-conduct discharge and reduction to E–1 but not the unconfined hard labor. The Court of Criminal Appeals held Boddie's pleas of guilty of larceny and attempted larceny improvident and affirmed convictions for wrongful appropriation and attempted wrongful appropriation and the approved sentence. 47 MJ 515, 519 (1997).

The Judge Advocate General of the Air Force certified the following issue for review by this Court:

WHETHER THE AIR FORCE COURT ERRED AS A MATTER OF LAW WHEN IT RULED THAT APPELLEE'S STATED INTENTION TO PAY COLORTYME THE VALUE OF THE MERCHANDISE WAS A MATTER IN SUBSTANTIAL CONFLICT WITH APPELLEE'S INTENT TO STEAL THAT MERCHANDISE.

We also granted review of the following issue:

WHETHER APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO [AMN BODDIE].

For the reasons to be stated, we answer the certified question in the affirmative. Consistent with our opinion in *United States v. Gorski,* 47 MJ 370 (1997), we also grant administrative relief on the granted issue.

## FACTS

Boddie, a security policeman, decided to furnish his new apartment with rent-to-own furniture. He entered into a contract with ColorTyme for a big-screen color television, a stereo, a couch, a chair, two tables, and a lamp. He soon realized that he could not make ends meet. He painted over the rental company name on the television and stereo, and sold them, while he attempted to sell the furniture.

His purported plan was to use the money from these transactions to pay off his other bills. Then, he would continue paying on his contract with ColorTyme, hoping that company would never know that he had sold its property. During the providence inquiry, Boddie explained the plan as follows:

MJ: Okay, So you weren't going to take that money and pay off the rental contract, in which case it would have been yours, or were you doing that?

ACC: What I—it's kind of two-parted. What I intended on doing was selling the furniture along with the TV and stereo to pay off the rest of my bills so that I'd just have the ColorTyme bill to pay. That way I wouldn't have to worry about any other bill upcoming. And then I would just continue to pay the ColorTyme until it was actually mine and then they would never know.

Unfortunately, Boddie once again found that he could not pay his bills. In discussing a bad check with his squadron commander, he mentioned selling ColorTyme's property. This admission led to his court-martial.

## DISCUSSION

*Certified Issue*

The Court of Criminal Appeals held that Boddie did not have the requisite intent to plead guilty to larceny because he intended to pay ColorTyme the value of its property. 47 MJ at 519. That court found that Boddie "had a valid possessory interest in the" property, and although he breached the contract, his intent did not amount to larceny. *Id.* at 518.

Boddie argues that the lower court properly found a substantial basis existed to "overturn" his guilty plea. Answer to Final Brief at 2. During the providence inquiry, he testified that he intended to continue paying ColorTyme for the property until he owned

it. He asserts that this statement was "inconsistent" with his pleas to larceny and attempted larceny. Answer at 2. He submits that he had no "intent to permanently deprive ColorTyme of the use and benefit of the property or permanently to appropriate the property" for his own or another's use. Thus, his actions were no more than a breach of contract. Answer at 3.

The Government contends that Amn Boddie "needed only to intend permanently to appropriate the property to the benefit of the purchasers," which he admitted. Further, intention to pay for the property later does not negate the intent to permanently deprive ColorTyme of the merchandise. Reply Brief at 2. Boddie "swore under oath" that he did not intend to give the property back to ColorTyme. *Id.* at 3. He also swore "that he intended to deprive ColorTyme of the use and benefit of the merchandise, as well as to appropriate the use and benefit of the merchandise to the buyers." Final Brief at 7.

The Government concludes that there was no "matter in substantial conflict with" the guilty plea. Final Brief at 12. It argues that the lower court confused the right to receive payment for the goods with the right to possession of the goods. Final Brief at 13. "Intent to pay for" the property of another "is not a defense to larceny." Final Brief at 15.

Article 121 defines larceny as [1] "withhold[ing] by any means, from the [2] possession of the owner ... any article [3] of value ... [4] with intent permanently to deprive ... another person of the use and benefit of [the] property."

The issue in this case is whether Boddie had the requisite intent to deprive ColorTyme of its property permanently when he intended to pay for the property under his contract.

In *United States v. Faircloth*, 45 MJ 172 (1996), this Court upheld a guilty plea to larceny where Faircloth was one of two co-payees on a check and he forged the other co-payee's signature. This Court reasoned that "Faircloth admitted that [the co-payee] had a superior possessory interest" in the property. *Id.* at 174. We refused to over-turn the guilty plea because of the "mere possibility" that Faircloth had a defense. Instead, we noted that the issue was "providence" of the guilty plea, "not sufficiency of the evidence." As such, our standard was to determine whether there was "a 'substantial basis' in law and fact" to overturn the guilty plea. We held that there was not. *Id.* at 174.

Here, Boddie had a possessory interest in the property. However, he did not have an ownership interest which allowed him to transfer title. Although he intended to acquire that ownership interest, he also intended to deprive ColorTyme of its ownership interest prior to the time at which he would fulfill his obligations to ColorTyme.

■ During a providence inquiry, a military judge should ask the accused about

> the facts and circumstances surrounding the act or acts charged in order to establish a factual basis for the judge's conclusion that the accused is, in fact, guilty.... [A]nd if the inquiry of the accused indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea, then the plea may be accepted by the military judge as provident.

*United States v. Davenport,* 9 MJ 364, 366–67 (CMA 1980).

■ We conclude that there is no substantial basis in law and fact to question these guilty pleas. The only aspect of this case raising any doubt at all is Boddie's statement concerning his intent to continue paying ColorTyme. "[T]he intent to pay for the property taken or otherwise to restore its equivalent is never a good defense *unless there is a substantial ability to do so;* a mere hope, under circumstances disclosing little foundation for optimism, that one can replace or pay for the property will not do." 2 W. LaFave and A. Scott, *Substantive Criminal Law* § 8.5(c) at 362–63 (1986) (emphasis added). Section 223.1(3), ALI Model Penal Code, *reprinted* in ALI *Model Penal Code and Commentaries* (Part II) 126, 151 (1980), provides in part:

It is an affirmative defense to prosecution for theft that the actor:

\*     \*     \*

(c) took property exposed for sale, intending to purchase and pay for it promptly, or reasonably believing that the owner, if present, would have consented.

*See also* Ga.Code Ann. § 16–8–10; Ky.Rev. Stat. 514.020; N.J.St.Ann. 2C:20–2c(3).

During the providence inquiry, Boddie clearly admitted that, before he sold the property, he painted over the ColorTyme label and serial number to hide ColorTyme's interest in it. He also admitted to each of the elements of attempted larceny and larceny. Boddie acknowledged that he "had no intention of ColorTyme ever getting that merchandise back" and that it was not his to sell. He conceded that he had no ownership interest in the property. Boddie admitted that he had agreed not to sell the equipment. Finally, he denied that he intended to use the money to pay off ColorTyme. He had little hope of paying ColorTyme, given his deteriorating financial situation.

Under these circumstances, we hold that the accused's guilty pleas to larceny and attempted larceny were provident.

*Granted Issue*

■ The offenses occurred between November of 1995 and March of 1996, for the most part well before the effective date of modified Article 57(a) and new Article 58b, UCMJ, 10 USC §§ 857(a) and 858b, respectively. Boddie was sentenced on August 3, 1996, to a bad-conduct discharge, hard labor without confinement, and reduction to E–1. The convening authority did not act until September 26, 1996.

This case is a trailer to *United States v. Gorski, supra.* In *Gorski,* we held that application of modified Article 57(a) and new Article 58b was a violation of the *Ex Post Facto* Clause of the United States Constitution if all the defendant's offenses occurred prior to the effective date of these statutory provisions (April 1, 1996).

In the case at bar, Article 58b did not take effect because Boddie was not sentenced to confinement. However, assuming regularity, the accused's reduction in grade occurred 14 days after sentence (August 17) rather than at the time the convening authority acted (September 26, 1996). Thus, Boddie is entitled to recoup the amount of pay and allowances that he lost as a result of the premature reduction in grade.

The decision of the United States Air Force Court of Criminal Appeals is reversed to the extent that it affirmed convictions for wrongful appropriation, as to the specifications of Charge I, and attempt to wrongfully appropriate, as to the specification of Charge II. The findings of guilty of larceny and of attempt to steal originally alleged in those specifications are reinstated. The reinstated findings are affirmed. In all other respects the decision below is affirmed as to result only. Collection of any forfeitures, and execution of the reduction in grade prior to the date of the convening authority's action, are hereby declared to be without legal effect. Any forfeitures already collected from the accused, and any pay and allowances withheld because of the premature reduction in grade will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.

Chief Judge COX and Judges GIERKE and RIPPLE * concur.

SULLIVAN, Judge (dissenting):

This could be an important case in the world of rental debts for the military—important not only for the stability of the law but for fairness in punishment, since the maximum punishment of larceny is far more severe than the maximum punishment of wrongful appropriation for the identical items.[1]

---

* Judge Kenneth F. Ripple of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

1. For instance, the maximum punishment for larceny of property (other than military property) with a value of more than $100 is: a dishonorable discharge, total forfeitures, and confinement for *5 years.* Para. 46e(1)(d), Manual for Courts–

In this case, a young serviceman got tangled up with a rent-to-own furniture company. Airman Steven Boddie wanted a TV, a stereo, and some furniture for his family in his new apartment near Laughlin Air Force Base, Texas. ColorTyme Rent–To–Own (ColorTyme) rented these items to Boddie for a monthly fee under several rent-to-own contracts. Under the contracts, Boddie, at the end of paying the monthly fees, would own the TV, stereo, and furniture. ColorTyme, over the contract life, would be paid over twice the retail cost of these items: a good deal for ColorTyme but a bad one for Boddie!

Boddie's financial situation worsened, and he sold the TV and the stereo to make ends meet. At his trial for larceny of the TV and stereo, as well as several items of furniture, Boddie was asked by the judge how he expected to get away with selling ColorTyme's property before the end of the contract term. The following colloquy occurred:

> MJ: Okay. So you weren't going to just take that money [from the sale of the TV and stereo and the furniture] and pay off the rental contract, in which case it would have been yours, or were you doing that?
> ACC: What I—It's kind of two-parted. What I intended on doing was selling the furniture along with the TV and stereo to pay off the rest of my bills so that I'd just have the ColorTyme bill to pay. That way I wouldn't have to worry about any other bill upcoming. *And then I would just continue to pay the ColorTyme until it was actually mine and then they would never know.* .

(Emphasis added.)

The three Federal appellate judges of the Court of Criminal Appeals held that this statement at the providence inquiry should have alerted the judge to the legal reality that he was dealing with wrongful appropriation, not larceny. Thus, Boddie's statements that he would continue to pay ColorTyme until the property "was actually mine" indicated a temporary (not permanent) owner-

ship deprivation of property. This is the main difference between larceny and wrongful appropriation. Thus, I conclude the court below used the facts and case law from their court and ours to properly reduce the charge from larceny to wrongful appropriation. Its reasoning is sound:

> It must be recalled that appellant had a valid possessory interest in the chattel so long as he continued to make the payments. Without a doubt, selling property he did not (yet) own to a third-party was a breach of contract with ColorTyme. But a breach of contract, even when it amounts to civil conversion, is legally distinct from larceny.
>
> Long ago we decided that the use of a rental car beyond the terms of the contract could not be the subject of larceny, but only of wrongful appropriation. *United States v. McCracken*, 19 CMR 876 (AFBR 1955). Despite its antiquity, that case was cited with approval in *United States v. Abeyta*, 12 MJ 507 (ACMR 1981), which disapproved a conviction for larceny of taxi services. (*Abeyta* would probably not withstand scrutiny today in light of *United States v. Antonelli*, 35 MJ 122 (CMA 1992), and *Faircloth*, [45 MJ 172 (1996)] but for different reasons than are of concern here.)
>
> The government's argument spends much of its attention on the wrong element, the wrongfulness of the taking, rather than the intent which accompanies that wrongful taking. Not every nonpermissive taking constitutes a larceny. *See, e.g., United States v. Harville*, 14 MJ 270, 271 (CMA 1982) (citing *United States v. Hayes*, [8 USCMA 627, 629–30,] 25 CMR 131, 133–34 (CMA 1958) (borrowing article without prior permission of owner not necessarily violation of Article 121)). There must also be the requisite criminal intent. *Id.*
>
> Consistent with *McCracken*, the courts have commonly treated the wrongful with-

---

Martial, United States, 1984. The maximum punishment for wrongful appropriation of the same type of property is: bad-conduct discharge, total forfeitures, and confinement for *6 months*.

Para. 46e(2)(b). Thus, if the majority view of the law prevails there will be a radical sea change in the treatment of this type of crime in the military.

holding, or carrying over, of rented or borrowed property to be wrongful appropriation, not larceny. *See, e.g., United States v. Jones,* 35 MJ 143 (CMA 1992); *United States v. Hale,* 28 MJ 310, 311 (CMA 1989). In *Hale,* then-Chief Judge Everett cautioned against blurring the sharp distinctions between contract and criminal law by converting civil derelictions into crimes. Hale had kept a rental car beyond the terms of the contract and had been convicted of its wrongful appropriation and of dishonorable failure to pay the rental contract for the holdover period. This was, of course, a civil conversion, but whether Hale could be convicted of larceny or wrongful appropriation depended upon his *intent at the time of the taking,* a factor irrelevant to the common law tort of conversion. *Id.* at 311.

Even in a guilty plea, a matter which calls into question whether an accused has the requisite *mens rea* requires further exploration on the part of the military judge. *United States v. Thomas,* 39 MJ 1078, 1079 (CGCMR 1994) (possibility of mistaken belief that rental company would have approved extenuation of contract held inconsistent with guilty plea to wrongful appropriation), *pet. denied,* 42 MJ 89 (1995).

Returning to the case at bar, there is no question but that appellant's sale of property he did not own constituted a wrongful taking or withholding, even though so long as he made payments to ColorTyme he maintained valid possession. He was not permitted to alienate the property, for the obvious reason that such alienation impaired ColorTyme's ownership interest (ability to repossess). However, appellant raised a substantial matter in conflict with the providence of his pleas when he indicated that his intention, at the time he sold the property, was to continue to pay Color-Tyme until their contract was discharged. Had he done so, of course, ColorTyme would have been perfectly content. Either way, that intention does not square with an intent to *permanently* deprive ColorTyme of its use or enjoyment of its property interest. We shall accordingly approve findings of wrongful appropriation and attempted wrongful appropriation in our decretal paragraph.

47 MJ 515, 518–19 (1997).

When I compare the lower court's opinion with the majority opinion, it is not even close. In my view, the majority opinion is not so well reasoned and rests on a flawed premise taken from a hornbook of civilian law, which is not applicable in the case before us. The majority would hold that an "intent to pay for the property taken or otherwise to restore its equivalent is never a good defense unless there is a substantial ability to do so." 49 MJ at 312. The majority then applies this "rule" to this case and holds Boddie "had little hope of paying ColorTyme, given his deteriorating financial situation." 49 MJ at 313. I would point out, however, that there was never any finding of this "fact" of "little hope" in the record of the case or in the opinion of the court below. Thus, as our Court is one of law with no factfinding power, this majority's "fact" is without basis or legal effect. *See* Art. 67(c), UCMJ, 10 USC § 867(c) (1994).

Moreover, the majority's own reasoning is flawed. Airman Boddie had a full-time job—an active duty position in the U.S. Air Force. Perhaps he would have continued to make the ColorTyme payments with proper management of his paycheck. Perhaps the Air Force Aid Society may have given him an emergency loan. The majority's rejection of Boddie's intent to continue to pay ColorTyme is therefore without basis in the record. More importantly, if Boddie had intended to keep paying ColorTyme, he could not legally be convicted of larceny under the reasoning of the lower court.

In addition, I note that recent cases from this Court are entirely overlooked by the majority opinion. In *United States v. Hughes,* 45 MJ 137, 139 (1996), this Court held that "[t]he withholding of another's property, after lawfully acquiring its possession, is not wrongful in the absence of a fiduciary relationship between the parties." Moreover, in *United States v. Mervine,* 26 MJ 482, 483–84 (1988), we held that a debt is

not a "proper subject" of larceny under Article 121.

At the end of the day, when looking at this case, I am convinced the lower court did the right thing and did not abuse its discretion in lowering the charged offense from larceny to wrongful appropriation. The majority's rescue attempt to save the Government's larceny conviction is flawed and could lead to bad law on rent-to-own contracts.[2] Accordingly, I would answer the certified question in the negative because the Court of Criminal Appeals did not err. On the granted issue regarding the *Ex Post Facto* law, I would send the case back to the Court of Criminal Appeals, consistent with my opinion in *United States v. Gorski*, 47 MJ 370, 376–77 (1997) (concurring in part and in the result). *See United States v. Roseboro*, No. 98–0439, —— MJ —— (Daily Journal July 27, 1998) (Sullivan, J., dissenting), and *United States v. Keeney*, 49 MJ 388, 389 (1998) (Sullivan, J., concurring in part and dissenting in part).

2. Further proof that the majority is on the wrong path is a recent case which shows that the military criminal justice system is treating this type of case not as larceny but as wrongful appropriation. *See, e.g., United States v. Richardson*, No. 98–0738/AF (1998) (petition pending in this Court). In *Richardson*, the accused rented a TV/VCR from the Base Exchange, peeled the identification stickers from it that provided, "This belongs to AAFES," drove to a Sumter, South Carolina, Pawn Shop, and passed off the television as his own to obtain money for gambling. (R. 20, 95). He was charged with and convicted of wrongful appropriation (not larceny) for acts very similar to those in the case at bar.