UNITED STATES, Appellee,

v.

Michael D. GORSKI, Senior Airman,
U.S. Air Force, Appellant.

No. 97–0034.
Crim.App. No. 32230.

U.S. Court of Appeals for
the Armed Forces.

Argued May 15, 1997.

Reargued Sept. 11, 1997.

Decided Nov. 18, 1997.

Cox, C.J., concurred with comment.

Sullivan, J., filed opinion concurring in part and in the result.

For Appellant: *Major Ray T. Blank, Jr.* (argued); *Captain Tishlyn E. Taylor* (reargued); *Lieutenant Colonel Kim L. Sheffield* (on brief); *Colonel Douglas H. Kohrt, Colonel David W. Madsen,* and *Captain Jeffrey B. Miller* (USAFR).

For Appellee: *Captain Mitchel Neurock* (argued and reargued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Brenda J. Hollis.*

*Opinion of the Court*

EVERETT, Senior Judge:

This case presents an issue common to many cases now pending in this Court: Whether the 1996 addition of Article 58b, Uniform Code of Military Justice, 10 USC § 858b, concerning forfeiture of pay and allowances has an *ex post facto* effect in violation of Article I, § 9, of the Constitution. We hold that it does as to any accused person tried for offenses committed before the effective date of that amendment who received, from a general court-martial, a sentence of confinement for more than 6 months, or, from a general or special court-martial, a sentence encompassing a punitive discharge and any confinement.

I

Prior to the 1996 addition, the Uniform Code of Military Justice only authorized forfeitures that were adjudged by a court-martial and subsequently approved by a convening authority. Moreover, the forfeitures adjudged only became effective from the date of the convening authority's action. Art. 57(a), UCMJ, 10 USC § 857(a).

In 1996, however, Congress decided that the effective date should be the earlier of the date of the convening authority's action or 14 days after the date sentence was adjudged. Art. 57(a)(1), Pub.L. No. 104–106, Title XI, § 1121, 110 Stat. 462. Moreover, there was added to the Code Article 58b, which provided:

§ 858b. Art. 58b. Sentences: forfeitures of pay and allowances during confinement

(a)(1) A court-martial sentence described in paragraph (2) shall result in the forfeiture of pay and (if adjudged by a general court-martial) allowances due that member during any period of confinement or parole. The forfeiture pursuant to this section shall take effect on the date determined under section 857(a) of this title (article 57(a)) and may be deferred as provided in that section. The pay and allowances forfeited, in the case of a general court-martial, shall be all pay and allowances due that member during such period and, in the case of a special court-martial, shall be two-thirds of all pay due that member during such period.

(2) A sentence covered by this section is any sentence that includes—

(A) confinement for more than six months or death; or

(B) confinement for six months or less and a dishonorable or bad-conduct discharge or dismissal.

(b) In a case involving an accused who has dependents, the convening authority or other person acting under section 860 of this title (article 60) may waive any or all of the forfeitures of pay and allowances required by subsection (a) for a period not to exceed six months. Any amount of pay or allowances that, except for a waiver under this subsection, would be forfeited shall be paid, as the convening authority or other person taking action directs, to the dependents of the accused.

(c) If the sentence of a member who forfeits pay and allowances under subsection (a) is set aside or disapproved or, as finally approved, does not provide for a punishment referred to in subsection (a)(2), the member shall be paid the pay and allowances which the member would have been paid, except for the forfeiture, for the period during which the forfeiture was in effect.

Pub.L. No. 104–106, Title XI, § 1122, 110 Stat. 463, as amended by Pub.L. No. 104–201, § 1068, 110 Stat. 2655 (1996).

The legislative history shows that in the bill proposed by Senator Barbara Boxer which ultimately evolved into Article 58b (S.571, 104th Cong., 1st Sess.—Mar. 16, 1995), there was a savings clause (§ 3) for offenses committed prior to the date of the amending legislation. The text of that savings clause is peculiar in its anticipation of a constitutional question likely to be raised regarding offenses committed prior to the date of enactment.[1] The original bill made the new law ineffective with respect to such offenses if the amendment were held to be unconstitutional. However, in the form finally enacted, the only savings clause in the statute concerned sentences adjudged prior to April 1, 1996, the effective date of the amending legislation.[2] We are unaware of the explanation for not including a savings clause with the earlier date, but note the contemplation in the earlier version of a court test of the bill's constitutionality. We shall assume the omission was deliberate—a deletion of what was deemed to be a redundant savings clause—rather than now attempt to read into Article 58b an exclusion of all offenses that preceded its enactment.

 Therefore, we must determine whether Gorski and others like him may properly

claim that Article I, § 9, has been violated by the application of a "forfeiture" provision that had not been enacted at the time the offenses occurred. In this connection, it has been suggested that "forfeiture" provisions of the Uniform Code of Military Justice are in some way distinguishable from such clearly recognized punishments as "fines." However, even though general courts-martial may adjudge fines, forfeitures—which are unique to military justice—are much more common. In several respects they are distinguishable from the "fines" imposed by courts-martial or by federal and state criminal courts. That a forfeiture adjudged by a court-martial is a punishment is confirmed by the fact that in various articles of the Code, "forfeitures" are referred to as part of the "punishment" that may be imposed by court-martial sentence. See, e.g., Arts 19, 20, and 57(a), UCMJ, 10 USC §§ 819, 820, and 857(a), respectively.[3] Under those circumstances, we cannot accept the Government's contention that statutes concerning forfeitures pertain only to "administrative" matters—rather than to "punishments."

A forfeiture of property is sometimes construed as punishment for purposes of the Eighth Amendment. See Austin v. United

---

1. Section 3 of S. 571 reads as follows:

 Sec. 3. EFFECTIVE DATE AND APPLICABILITY

 (a) PROSPECTIVE APPLICABILITY.—Subject to subsection (b), the amendments made by this Act shall take effect on the date of the enactment of this Act and shall apply with respect to pay and allowances for periods after such date.

 (b) SAVINGS PROVISION.—(1) If it is held unconstitutional to apply section 858b of title 10, United States Code (article 58b of the Uniform Code of Military Justice), as added by section 1(a), with respect to an act punishable under the Uniform Code of Military Justice that was committed before the date of enactment of this Act, then—

 (A) with respect to acts punishable under the Uniform Code of Military Justice that were committed before that date, the amendments made by this Act shall be deemed not to have been made; and

 (B) the amendments made by this Act shall apply with respect to acts punishable under the Uniform Code of Military Justice that are committed on or after the date of the enactment of this Act.

141 Cong. Rec. S.4104 (daily ed. March 16, 1995).

2. The amendments made in §§ 1121 and 1122 "shall apply to a case in which a sentence is adjudged by a court-martial on or after the first day of the first month that begins at least 30 days after the date of the enactment of this Act." 110 Stat. 462, 463. The Act was enacted on February 10, 1996.

3. Forfeiture has always been authorized as a military punishment. See W. Winthrop, Military Law and Precedents 427, Appendix: Art. LIX, American Articles of War of 1775 (2d ed. 1920 Reprint); W. Hough, Precedents in Military Law 839, Appendix: Clause 28, Annual Mutiny Act 1855; L. Tillotson, The Articles of War Annotated 95: Art. 45 (3d rev. ed.1944); ¶¶ 126h (2) and 127c, Manual for Courts–Martial, United States, 1951 (paragraph 127c provides a Table of Equivalent Punishments which equates forfeiture of 1 day's pay to 1 day of confinement at hard labor); ¶¶ 126h (2) and 127c (1), Manual for Courts–Martial, United States, 1969 (Revised edition); RCM 201(f)(1)(A)(ii) and (f)(2)(B)(i), and 1003(b)(2), Manual for Courts–Martial, United States (1995 ed).

*States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding that a civil forfeiture may violate the Eighth Amendment's proscription against excessive fines); *Libretti v. United States,* 516 U.S. 29, 41–42, 116 S.Ct. 356, 364, 133 L.Ed.2d 271 (1995) (holding that although forfeiture is a punishment imposed on the defendant as part of his sentencing, it does not require a specific lower court inquiry into factual basis); *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (holding that a state tax imposed on possession and storage of drugs was punishment which violated double jeopardy). Therefore, we see no reason why a forfeiture of pay pursuant to a court-martial sentence should not be viewed as a punishment.

The prohibition against *ex post facto* laws has from the outset been viewed as concerned with punishment. *See Calder v. Bull,* 3 U.S. (3 Dallas) 386, 390, 1 L.Ed. 648 (1798). Justice Chase in *Calder* declared: "The Legislature may enjoin, permit, forbid, and punish; ... but they cannot change innocence to guilt." 3 U.S. (3 Dallas) at 388. He thereupon described the test for determining whether a law is *ex post facto,* as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action.2d. Every law that *aggravates* a *crime,* or makes it *greater* than it was, when committed.3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

3 U.S. (3 Dallas) at 390; *see also Beazell v. Ohio,* 269 U.S. 167, 169, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)("any statute ... which makes more burdensome the punishment for a crime, after its commission"). In our view, a forfeiture of pay specifically adjudged by a court-martial or resulting from its sentence falls within the purview of Article I, § 9.

■ An increase in the maximum sentence to confinement authorized for a crime would clearly be *ex post facto* legislation. Likewise, a statute authorizing greater maximum forfeitures pursuant to a court-martial sentence would seem questionable. Here, however, we are concerned not with a maximum, but with a minimum sentence. Change in a minimum sentence also can raise *ex post facto* issues. *Lindsey v. Washington,* 301 U.S. 397, 400–01, 57 S.Ct. 797, 798–99, 81 L.Ed. 1182 (1937) (holding that a statute that makes "mandatory what was before only the maximum sentence" violates the rule against *ex post facto* laws); *see also Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (holding that retrospective application of sentencing guidelines that increased the presumptive term for sentencing was *ex post facto* ). Thus, if Congress had required for the first time a mandatory minimum sentence of confinement for certain offenses, application of such a mandatory minimum to an accused who had committed those offenses prior to enactment of the new legislation would violate Article I, § 9.

■ In our view, the same rationale should apply with respect to forfeitures because they are punishment. In that event, persons who, like Gorski, are being subjected to operation of Article 58b have a valid complaint; as a practical matter they are being subjected retroactively to a mandatory minimum punishment of total forfeitures—or, at least, total forfeitures after the earlier of the convening authority's action or the passage of 14 days after sentence.[4] The Supreme Court has held that "it is the effect, not the form, of the law that" makes it *ex post facto* and that legislation must "give fair warning" of its effect so that people can rely on the law's meaning. *Weaver v. Graham,* 450 U.S. 24, 28, 31, 101 S.Ct. 960, 964, 67 L.Ed.2d 17

---

4. Under the language of Articles 57 and 58b, Uniform Code of Military Justice, 10 USC §§ 857 and 858b, respectively, when construed together, it might even be arguable that the forfeiture called for by the latter provision should relate back to the date when the sentence was adjudged.

(1981).[5] To apply Article 58b to offenses preceding its enactment violates this principle.

The Government responds that Article I, § 9, has not been violated because the minimum punishment has never been increased. According to this argument, at the time of the offenses a court-martial was entitled to adjudge a sentence of "no punishment," and after Article 58b was enacted, the same option still remained. Accepted literally, this argument would mean that if the UCMJ were amended to provide that a court-martial was free to impose "no punishment" for an offense but otherwise must impose a long sentence of confinement, Article I, § 9, would not be violated. Thus, so long as a court-martial nominally remains free to impose a sentence of "no punishment," Congress could impose retroactively any form of mandatory minimum sentence that it chooses. We must reject such a grudging view of the *Ex Post Facto* Clause—a view that would enable almost total evasion of that clause. Instead, we conclude that when legislation like Article 58b is adopted, it cannot be applied retroactively to those who already have violated the UCMJ. *Cf. People v. De Moss,* 5 Cal.2d 612, 55 P.2d 489 (1936)(change accelerating date for execution cannot be made retroactively).

The Government has cited for a different view the Supreme Court's decision in *California Department of Corrections v. Morales,* 514 U.S. 499, 509, 115 S.Ct. 1597, 1605, 131 L.Ed.2d 588 (1995). There, however, the adverse effect on Morales of the change in parole-hearing thresholds was too speculative and remote to permit invocation of the *Ex Post Facto* Clause. Much more on point is *Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Supreme Court's most recent pronouncement concerning *ex post facto* laws. There, a new interpretation of a statute concerning confinement credits led to the defendant's reincarceration after his release from confinement. All nine Justices concluded that under established Supreme Court precedents, applying the new interpretation of the statute gave it an improper retroactive effect.

In support of its position, the Government also relied on *United States v. Pedrazoli,* 45 MJ 567 (A.F.Ct.Crim.App.1997), which in turn cites *United States v. Powell,* 12 USCMA 288, 30 CMR 288 (1961), as this Court's precedent. However, the *Powell* decision made no specific reference to an *ex post facto* limitation. Therefore, we conclude *Powell* has minimal relevance to the present issue.

■ Gorski's sentence also included a reduction to the grade of E–1. Article 57(a)(1) required that the reduction be effective 14 days after sentence (June 12, 1996), rather than on the date of the convening authority's action (July 15, 1996), which was the effective date at the time of the offenses. Our conclusions herein regarding the *ex post facto* effect of Article 58b also apply to the 14–day provision in Article 57(a)(1). Thus, execution of the reduction in this case during the period June 12 through July 14, 1996, also violates the *Ex Post Facto* Clause.

## II

■ Even though we decide that Article 58b had an unconstitutional *ex post facto* effect as to Gorski, this does not require holding that Article 58b is invalid as to all accused persons—regardless of the dates of their offenses. Instead, it may still be applied as if the savings clause proposed by Senator Boxer had been incorporated in the statute finally adopted. In this regard, the result is like that with respect to Article 3(a), UCMJ, 10 USC § 803(a)—which was held invalid by the Supreme Court when applied to a discharged servicemember, *see United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), but was later upheld by this Court when applied to a servicemember who had been discharged from the Army and then had reenlisted, *see United States v. Martin,* 10 USCMA 636, 28

---

**5.** Although the Government in its brief seems to minimize the significance of *Weaver v. Graham,* 450 U.S. 24, 28, 31, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), we note that at least seven of the Justices view it as having continued effect. *See Lynce v. Mathis,* 519 U.S. 433, ——, 117 S.Ct. 891, 896, 900, 137 L.Ed.2d 63 (1997).

CMR 202 (1959). This same conclusion applies to the 14–day provision of Article 57(a)(1).

## III

■ Although appellate government counsel forcefully asserted before us the position that Gorski had waived his *ex post facto* claim, they conceded that—in view of the large number of pending cases with the same issue and, at least in some instances, presenting no basis for the Government to claim waiver—it would be appropriate for the Court now to decide whether Article 58b has any constitutionally prohibited *ex post facto* effect.

However, the Government did not concede the issue of whether Gorski waived his claim in the event we agreed that the law had *ex post facto* application. Notwithstanding the Government's vigorous argument of waiver, we nevertheless elect not to consider whether Gorski or others similarly situated may have waived the claim. Thus, we also need not consider whether Gorski or others may have been denied effective assistance of counsel for failure to raise or litigate the *ex post facto* claim at trial or in the post-trial proceedings. We do so recognizing that at various times the Judges of this Court have expressed differing views as to waiver and because, in the interest of judicial economy, [6] it is simply neither reasonable nor cost effective to adjudicate each of the numerous pending cases. Moreover, to avoid the separate consideration of waiver and ineffective assistance of counsel will permit much earlier completion of appellate review and achieve finality without more delay. Delay is unfair to both the Government and appellant. This summary resolution also has the salutary effect of treating all servicemembers concerned in the same manner. Therefore, we elect not to consider the doctrine of waiver in these cases, thus limiting the scope of this opinion to a determination of the claim of *ex post facto* application of the law.

We have held that application of the automatic total-forfeiture rule to this appellant, whose sentence did not include forfeitures, and application of the 14–day provision of Article 57(a)(1), violate the *Ex Post Facto* Clause. The appropriate remedy does not affect the findings or sentence imposed in this case or the action of the convening authority which contains no reference to the automatic forfeiture. Rather, the remedy will extend only to recoupment of forfeitures taken in reliance on the provisions of Article 58b and 57(a)(1).

## IV

The decision of the United States Air Force Court of Criminal Appeals is affirmed. Collection of any forfeitures, and execution of the reduction in grade prior to the date of the convening authority's action, are hereby declared to be illegal. Any forfeitures already collected from appellant, and any pay and allowances withheld because of the illegal reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

Judge EFFRON did not participate.

COX, Chief Judge (concurring and commenting on Judge SULLIVAN's separate opinion):

I write only to observe that Judge Sullivan either has not read the majority opinion, or he does not understand it.

The *ex post facto* consequence of Article 58b, Uniform Code of Military Justice, 10 USC § 858b, is administrative in nature. It

---

6. "Conserving judicial time and effort" is a long-recognized basis for disposing of cases summarily—even though it might prove that an accused has received a slight windfall. *See United States v. Braxton*, 16 USCMA 504, 505, 37 CMR 124, 125 (1967) (per curiam), followed in *United States v. Fox*, 10 MJ 176 (CMA 1981)(per curiam) and *United States v. McCrae*, 16 MJ 485 (CMA 1983)(per curiam). Here the time of the judges of this Court and of the Courts of Criminal Appeals, as well as the time of the government and defense counsel in more than one hundred cases, totally outbalances the possibility that few accused might receive some pay of which they could by deprived by ingenious application of waiver.

does not pertain to the lawful sentence adjudged at trial; it only applies to what happens administratively following trial. Thus, the remedy is administrative.

We simply do not need 150 rehearings to put these servicemembers in the same position they would have been in had the law not been *ex post facto.*

SULLIVAN, Judge (concurring in part and in the result):

I agree with the excellent opinion of my Brother, Judge Everett, on the *ex post facto* question raised in this case. The prohibition against *ex post facto* laws which was established in the U.S. Constitution, Article I, Section 9 (signed September 17, 1787), is a sacred tenet of American jurisprudence. In my view, our decision that there was an *ex post facto* violation in this case is a common sense decision that most every federal judge in this country would accept.

The beauty of this unanimous decision on the *ex post facto* violation is spoiled somewhat by the majority's overreaching use of this opinion to resolve the over 150 pending cases before us which involve the same or a similar legal issue. These cases, however, may include different factual scenarios involving application of the legal doctrine of waiver and perhaps legal claims of ineffective assistance of counsel. The majority's decision today not only violates the "case-by-case" process of the law to reach a result in (as they put it) "the large number of pending cases with the same issue," 47 MJ at 375, but does significant damage to two important and well-established areas of the law (waiver and ineffective assistance of counsel). These two

areas of the law are ignored in order to reach this multi-case result. In my view, the end (solving 150–plus cases at once) does not justify the means.

On the point of waiver, I make this observation. It is an interesting fact that the five federal judges on this United States Court of Appeals without a blink or a dissent clearly found a glaring violation of the Constitution in the plain words of the forfeiture statute in this case. As we know, in the march of a typical case from the trial to our Court, several attorneys and one judge are involved in the process at the trial level. Several more attorneys and judges are involved at the appellate level. Surely one or more of the lawyers in the 150 cases that are resolved today by the majority saw what we judges saw. Is it not possible that one or more of these lawyers saw this *ex post facto* violation and raised it with their client in such a manner that finding a knowing waiver would be the fair judicial resolution of that case?[1] Thus, I do not agree with that portion of the majority opinion which refuses to rule on the question of waiver in this case and the other pending *ex post facto* cases on the ground of judicial efficiency.

In my view, such action by this Court, a court of law, may be an abdication of our duty and sends a message that our Court is a "problem solving" adjunct to the Department of Defense rather than a court of law. *See Johnson v. United States,* —— U.S. ——, ——, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997) (the Supreme Court has no authority to create "out of wholecloth ... an exception to" the plain-error rule). A court of law is

---

1. In fairness in our justice system, the claim of "waiver" and its twin brother "harmless error" have been familiar drumbeats in our Court in recent years. These two methods of affirming convictions for the Government, when there has been legal error in a case, have their proper place in our jurisprudence. However, fairness should be the cornerstone of any criminal justice system. Accordingly, a court must be fair to both sides in any litigation. Therefore, I find it unfair to the Government that our Court would refuse to consider the Government's assertion of waiver in this case and in all other pending *ex post facto* cases.

For centuries, British justice has set a high water mark in the world for fairness. Winston Churchill as Home Secretary in 1910 said: "[T]he treatment of crime and criminals mark and measure the stored-up strength of a nation, and are the sign and proof of the living virtue in it." M. Gilbert, *In Search of Churchill* 269 (Harper Collins, 1993).

Let us not set a lesser standard for America's military justice system. In the last 2 centuries, American justice has been a strong contender as the leader in this field of fair justice for its citizens. This has only been because American justice has been noteworthy for applying the law in an *equal manner to all parties* of a case.

not free (no matter how convenient or efficient it may be) to disregard a body of law like the doctrine of waiver. *Cf. United States v. Claxton,* 32 MJ 159, 162 (CMA[2] 1991) (Court of Military Review[3] exercising its unique sentencing powers may ignore law of waiver).

Since a waiver question is raised as a matter of law and fact in this case, I would answer it. I find no knowing and intelligent waiver of appellant's *ex post facto* claim in this record. There is no waiver here because appellant was not advised that the forfeiture he was facing as a result of the enactment of the new federal law (Art. 58b, Uniform Code of Military Justice, 10 USC 858b) could be overturned as unconstitutional by appellate review in his case. *See generally Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (knowing and competent waiver of constitutional right required before rule of waiver may be applied).

**2.** CMA is the Court of Military Appeals, this Court's former name. *See* § 924(a), 108 Stat. 2831.

**3.** *See* 41 MJ 213, 229 n. * (1994).