UNITED STATES

v.

Airman Damon R. HICKS, FR557–39–3697, United States Air Force.

ACM S29354.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 6 Jan. 1997.

Decided 28 April 1998.

**624**

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, and Major Margo Stone Newton.

Appellate Counsel for the United States: Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin, and Captain Tony R. Roberts.

Before PEARSON, Senior Judge, MORGAN and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge:

Our original opinion in this case was unpublished (ACM S29354, 31 March 1998). That opinion is hereby withdrawn.

Appellant was convicted, pursuant to his pleas, of three counts of carnal knowledge, 2 counts of sodomy with a child under 16 years of age, an indecent act, breaking a medical quarantine, false official statement, and disobeying the lawful order of a noncommissioned officer. The military judge sentenced him to a bad-conduct discharge, five months confinement, and reduction to E–1. Appellant contends that the military judged erred by failing to direct an inquiry to determine if appellant was competent to stand trial, that the Staff Judge Advocate's Recommendation

(SJAR) contained errors which required a new SJAR and convening authority's action, and that Articles 57(a) and 58b, UCMJ, violate the *Ex Post Facto* Clause of the Constitution with respect to his case. Finding no merit to appellant's arguments, we affirm.

### Mental Capacity to Stand Trial

Appellant contends that the military judge was aware of information which should have caused her to direct a mental health inquiry pursuant to RULE FOR COURTS-MARTIAL (R.C.M.) 706 to determine if he was competent to stand trial. Appellant asserts that the judge erred by failing to do so and that we should set aside the findings and sentence in his case, order an examination to determine his mental capacity to stand trial and his present mental capacity to participate in his appeal.

■ Appellant's mental capacity to stand trial was an interlocutory question of fact to be determined by the military judge. R.C.M. 909(c)(1). We review the judge's factual determinations that appellant was mentally competent under a clearly erroneous standard. *United States v. Proctor*, 37 M.J. 330, 336 (C.M.A.1993), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). A military judge is required to direct an inquiry into the mental condition of an accused when it appears to the judge that "there is reason to believe that the accused lacks capacity to stand trial." R.C.M. 706(a). Trial counsel and defense counsel are also permitted to request a mental examination of an accused. If it appears to counsel or the judge that a mental examination is required, the request for a mental exam must be accompanied by the basis of the belief that such an examination is necessary. *Id.*

■ "A person is presumed to have capacity to stand trial unless the contrary is established." R.C.M. 909(b). "Trial may proceed unless it is established by a preponderance of the evidence that the accused is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against the accused or to conduct or cooper-

ate intelligently in the defense of the case." R.C.M. 909(c)(2). Appellant raised no issue regarding mental capacity to stand trial and in fact both he and his defense counsel affirmatively stated it was not an issue.

Appellant was released from a 4–day hospital stay, apparently related to pretrial stress, the morning his trial began. Appellant had been previously treated for depression, including taking the prescription medication prozac, to relieve his depression. He was being considered for a possible medical separation from the Air Force due to this depression. The military judge questioned him about his ability to proceed with the trial, to understand the proceedings, and to assist in his own defense. Appellant assured the judge that he was feeling fine and was ready to proceed. He told the judge that the people who had helped him while he was in the hospital thought that he should proceed with his trial as scheduled. He said that he had not been given any medication while in the hospital and that he was not under the influence of any drugs or alcohol at the time of the trial. He further said that he hadn't been on any drugs for his depression for four or five months.

Both appellant and his defense counsel assured the military judge that there was no issue regarding appellant's mental capacity to stand trial. The record clearly indicates that appellant was alert and responsive throughout his trial. He appeared to be alert when answering the judge's questions during the guilty plea inquiry. When asked to explain what happened during the various offenses in his own words, he narrated the facts in considerable detail on his own. He also asked the judge on several occasions to allow him to consult with his defense counsel about certain questions. During sentencing, appellant made a detailed unsworn statement in question and answer format and also read a portion of his unsworn statement to the court.

Appellant introduced a medical evaluation board report during sentencing. This report was completed in early 1996 about a year before appellant's trial. Although appellant had in fact been diagnosed as suffering from a depressive disorder, the report did not give any indication appellant was mentally impaired in a manner which would affect his capacity to stand trial. The mental status examination portion of the report dated February 29, 1996, stated:

The patient is a depressed-looking 20–year–old, black male with rather poor eye contact but otherwise cooperative towards the psychiatric examiner and examination process. Speech—regular rate, rhythm but diminished intensity. Mood is depressed, affect is constricted. **Thought processes were goal-directed without evidence of loosening of associations.** Thought content—no evidence of delusions and/or auditory/visual hallucinations. The patient denied any suicidal or homicidal ideation. **Cognitively, the patient is alert and oriented times four.** The remainder of the cognitive exam was remarkable only for diminished ability to concentrate. **Insight and judgement were considered intact.** (Emphasis added.)

This report clearly supported appellant's own position that he had the requisite mental capacity to stand trial.

Thus, we find the military judge did not err by failing to direct a mental capacity examination of appellant. The military judge effectively found, based on appellant's own assurances of his mental capacity and her observations of appellant during the trial, that appellant had the requisite mental capacity to stand trial. R.C.M. 909(c)(1). This was reinforced by appellant's previous mental health evaluation. Having carefully reviewed the record, we likewise find the evidence established that appellant had the necessary mental capacity to stand trial. Article 66(c), UCMJ. Nothing presented during the trial came even close to establishing by a preponderance of the evidence that appellant lacked such mental capacity due to a mental disease or defect. R.C.M. 909(c)(2).

Although not specifically listed in his assignment of error, appellant argues in his brief that we should order a mental health examination "into the appellant's mental capacity to stand trial and **his present capacity to participate in his appeal.**" (Emphasis added.) Having found no basis to question his capacity to stand trial, we likewise find

the record, including matters submitted on appeal, is devoid of any evidence that appellant may lack the necessary mental capacity to assist in his appeal. Therefore, we deny appellant's request.

*Inaccuracy of Staff Judge Advocate's Recommendation*

■ Appellant points to certain inaccuracies in the SJAR which he contends require a new SJAR and convening authority's action in his case. While we agree there minor technical inaccuracies in the SJAR, absent plain error, appellant forfeited this issue by failing to timely object to the SJAR. R.C.M. 1106(f)(6); *United States v. Rivera*, 44 M.J. 527, 530 (A.F.Ct.Crim.App.1996), *aff'd*, 46 M.J. 52 (1997). When reviewing errors found in SJARs, "there must not only be error, there must be prejudice to the rights of the accused." *United States v. Green*, 44 M.J. 93 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 371, 136 L.Ed.2d 261 (1996); *United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

The SJAR consists of the written advice of the SJA which incorporates an Air Force Form 1359, Report of Result of Trial, and a personal data sheet on appellant. Appellant submits that the Form 1359 incorrectly reports the results of three specifications and that the body of the SJAR gave incorrect information on the maximum sentence which appellant faced.

■ On Specification 1 of Charge I, the military judge found appellant guilty except the words "on or about 1 January 1996" substituting therefor "between on or about 1 January 1996 and on or about 31 January 1996." The Form 1359 indicates a finding to "on or about 31 Jan 96." On Specification 1 of Charge III, the judge found appellant guilty as charged to a 1 January 1996 offense while the Form 1359 incorrectly reflects a substituted finding to a date of "31 Jan 96." Both these offenses occurred on the same date and appellant told the military judge that it was sometime during January 1996, but that he thought it was probably during the later part of the month. However, appellant agreed that on or about January 1996

would accurately reflect the time of the offenses.

We note from carefully reviewing the record that Specification 1 of Charge II also involved the same victim on the same date and that on that offense the judge substituted "on or about 31 January 1996" for "on or about 1 January 1996." This was properly reported on the Form 1359. We further note that the promulgating order correctly reflects all the military judge's findings. While it is clear from the record that all three of these offenses occurred on the same date at the time and location, the judge's variances in her date findings created understandable confusion for those preparing the result of trial form.

Nonetheless, we find that the SJAR correctly advised the convening authority of the time frame (January 1996) of these offenses. Appellant forfeited this issue by failing to raise it in his response to the SJAR, and we find that these minor date variations could not conceivably have been prejudicial to appellant. *Green*, 44 M.J. at 95.

■ Appellant next contends that the Form 1359 incorrectly reported the findings on the Specification of Charge IV. Appellant was charged with making a false official statement by denying he had sexual relations with three underage females, but he pled guilty to lying about only two girls. This was because the investigators only asked him about two of the girls when he made his statement. Consistent with appellant's guilty plea, the military judge excepted out the reference to the third girl in her findings. The Form 1359 merely states that "appellant gave a false official statement." We have no hesitation in finding that this summary was both accurate and adequate in informing the convening authority of the findings on this offense. Appellant forfeited this issue by failing to raise it in his response to the SJAR, and we further find no possible prejudice to appellant. *Id.*

■ Appellant also contends that the SJAR incorrectly stated the maximum punishment appellant faced. Citing *United States v. Boyle*, 30 M.J. 656 (A.F.C.M.R. 1990), appellant asserts that although the

SJAR is not required to set forth the maximum sentence, if the SJA does so, he must state it accurately. Appellant fails to note that *Boyle* also held that where the defense did not raise this error in the defense response to the SJAR, "it was waived absent manifest injustice." *Boyle,* 30 M.J. at 657.

Appellant asserts that the SJAR mistakenly stated that appellant faced a maximum of "two-thirds forfeitures" rather than the correct "forfeiture of two-thirds pay per month for six months." We find that the SJAR language was basically accurate and would not have misled the convening authority as to the maximum possible sentence. This was a special court-martial where appellant did not even receive any forfeitures as part of his sentence. Under the circumstances of appellant's case, we find this to be a specious issue. In any case, appellant forfeited this issue by failing to raise it in his post-trial submissions, and we find no possible prejudice to appellant from this minor technical variation in the SJAR.

### *Ex Post Facto Application of Articles 57(a) and 58b, UCMJ*

In *United States v. Gorski,* 47 M.J. 370, 373–74 (1997), the Court of Appeals for the Armed Forces ruled that the application of these articles to crimes which occurred before April 1, 1996, violates the *Ex Post Facto* Clause of the United States Constitution. *Gorski,* 47 M.J. at 373–74. Some of appellant's offenses occurred before the effective date of the statutory changes and some occurred after the effective date. The Court of Appeals for the Armed Forces has subsequently ruled, based on the military justice system's unitary sentencing concept, that if any offense before a court-martial occurred after the April 1, 1996, effective dates the Articles 57(a) and 58b, the provisions of those Articles apply to the accused and raise no *ex post facto* application concerns. *United States v. Carter,* No. 97–1121/AF (Apr. 4, 1998). Therefore, we find that Articles 57(a) and 58b, UCMJ, may be applied to appellant's case without violating the *Ex Post Facto* Clause of the Constitution.

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge PEARSON and Judge SPISAK concur.