**UNITED STATES, Appellee,**

v.

**Private E2 Angela L. JAMES, United States Army, Appellant.**

**ARMY 9601113.**

U.S. Army Court of Criminal Appeals.

27 Jan. 2000.

For Appellant: Captain Thomas Jay Barrett, JA (argued); Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Lieutenant Colonel Michael L. Walters, JA; Major Leslie A. Nepper, JA (on brief); Major Scott R. Morris, JA; Major Jonathan F. Potter, JA.

For Appellee: Captain Mary E. Braisted, JA (argued); Colonel Joseph E. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA (on brief); Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA.

Before MERCK, KAPLAN, and BROWN, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

PER CURIAM:

A military judge sitting alone as a general court-martial found the appellant guilty, in accordance with her pleas, of willfully disobeying the lawful command of a superior commissioned officer, making false official statements to U.S. Army Criminal Investigation Command agents (two specifications), and making and uttering numerous checks

without sufficient funds (five specifications), in violation of Articles 90, 107, and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 907, and 923a [hereinafter UCMJ]. The military judge sentenced the appellant to a bad-conduct discharge, confinement for sixty days, forfeiture of all pay and allowances, reduction to Private E1, and a $1,000.00 fine. The convening authority, on the advice of his staff judge advocate,[1] reduced the forfeitures to $577.00 pay per month for six months and otherwise approved the sentence as adjudged.

## APPELLATE HISTORY

This case initially came before the court in November 1997 for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We determined that prejudicial error existed and remanded the case to The Judge Advocate General for transmittal to an appropriate convening authority for the appointment of a sanity board pursuant to R.C.M. 706. Thereafter, the convening authority was to order an evidentiary hearing before a military judge pursuant to *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967

1. The staff judge advocate advised the convening authority that approval of forfeiture of all pay and allowances would contravene the guidance contained in the discussion portion of Rule for Courts–Martial 1107(d)(2) [hereinafter R.C.M.] that a soldier should not be deprived of more than two-thirds pay unless that soldier is in a confinement status.

2. The assigned errors read as follows:

I
THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE INVOKED THE PRESUMPTION OF SANITY BASED ON A MENTAL STATUS EVALUATION CONDUCTED IN LIEU OF A SANITY BOARD REQUESTED IN GOOD FAITH BY THE DEFENSE PURSUANT TO R.C.M. 706, WHERE THE PERSON CONDUCTING THE MENTAL STATUS EVALUATION WAS NOT A PSYCHIATRIST OR A CLINICAL PSYCHOLOGIST AND THERE WAS NO FINDING BY THE MILITARY JUDGE THAT THE MENTAL STATUS EVALUATION WAS AN ADEQUATE SUBSTITUTE AS CONTEMPLATED BY R.C.M. 706.

II
THE STAFF JUDGE ADVOCATE'S POST–TRIAL RECOMMENDATION AND THE COURT MARTIAL ORDER INCORRECTLY STATES [sic] THAT THE APPELLANT WAS CONVICTED OF FORGERY OF NUMEROUS CHECKS (5 SPECIFICATIONS) WHERE THE ACTUAL

WL 4276 (1967). *See United States v. James,* 47 M.J. 641 (Army Ct.Crim.App. 1997). The mandated sanity board was completed at Heidelberg, Germany, on 23 December 1997, and the *DuBay* hearing was held before a military judge at Mannheim, Germany, on 22 and 29 December 1997. Thereafter, the processing of the case became bogged down. Delay in assembling the verbatim record of the evidentiary hearing and the omission of appellate exhibits relied upon by the judge in reaching her findings of fact and conclusions of law necessitated this court ordering the record to be returned a second time to the convening authority for correction. Finally, in May 1999, the properly authenticated record was returned to the office of the Clerk of Court. Supplemental pleadings were then filed by the appellant and the government, and the case became ripe for further review in October 1999.

## ASSIGNMENTS OF ERROR

The appellant has advanced a total of seven assignments of error in her original and supplemental pleadings,[2] and she has person-

CONVICTIONS WERE FOR MAKING AND UTTERING WORTHLESS CHECKS. WHILE NOT RAISED BY DEFENSE COUNSEL AT TRIAL, THE SHEER NUMBER OF ERRORS REQUIRES THE CASE BE RETURNED FOR A NEW AND CORRECT POST–TRIAL STAFF JUDGE ADVOCATE RECOMMENDATION AND ACTION BY THE CONVENING AUTHORITY. *SEE GENERALLY* MANUAL FOR COURTS–MARTIAL, UNITED STATES, RULES [sic] FOR COURTS–MARTIAL 1106 (1995).

III
THE APPELLANT WAS WRONGFULLY CONVICTED OF TWO SPECIFICATIONS OF MAKING A FALSE OFFICIAL STATEMENT DURING TWO SEPARATE INTERROGATIONS BECAUSE THE PRESIDENT OF THE UNITED STATES HAS DECLARED PROCEDURALLY THAT STATEMENTS MADE BY A SUSPECT DURING AN INTERROGATION ARE NOT OFFICIAL STATEMENTS WITHIN THE MEANING OF THE ARTICLE. WHILE NOT RAISED AT TRIAL, WAIVER DOES NOT APPLY BECAUSE THE APPELLANT WAS NOT MENTALLY COMPETENT TO WAIVE THIS ISSUE. *SEE UNITED STATES V. SOLIS,* 46 M.J. 31 (SLIP OP. MARCH 1997).

SUPPLEMENTAL I
THE RECORD OF TRIAL IS NOT SUBSTANTIALLY COMPLETE AND THEREFORE A PUNITIVE DISCHARGE CANNOT BE AD-

ally raised one matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).[3] We have already granted the appellant relief on two of the assignments of error (by ordering a sanity board and by ordering a full and complete record of the *DuBay* hearing). Upon further review, we have determined that the appellant is entitled to relief as more fully explained below with respect to her third supplemental assignment of error. We find no merit in the remaining assignments of error[4] or in the *Grostefon* matter; however, the appellant's fourth supplemental assignment of error merits discussion.

## DISCUSSION

In her third supplemental assignment of error, the appellant correctly asserts that applying the provisions of Article 57(a), UCMJ, 10 U.S.C. § 857(a), in her case would give rise to a violation of the Ex Post Facto Clause of the United States Constitution. *See United States v. Gorski*, 47 M.J. 370 (1997). The crimes of which the appellant was properly convicted were all committed prior to the end of September 1995. Her court-martial concluded, and she was sentenced, on 13 June 1996. In the interim period, amendments to the UCMJ took effect on 1 April 1996.[5] Therefore, the appellant

has correctly identified herself as a member of the class of persons protected by the holding in *Gorski* from statutorily mandated enhanced punishment. Under the provisions of Article 57(a)(1), UCMJ, in effect at the time of the appellant's trial, any forfeiture of pay would have applied commencing on 27 June 1996, the date that is fourteen days after the date on which the sentence was adjudged. Under the law existing prior to the 1996 UCMJ amendments, any forfeiture of the appellant's pay would not have gone into effect until 3 October 1996, the date of the convening authority's Article 60, UCMJ, 10 U.S.C. § 860, action on the case. We will refer this case to The Judge Advocate General for a determination of the amount of relief, if any, to which the appellant is entitled.

In the appellant's fourth supplemental assignment of error, the appellant asserts that the finding of guilty of Charge III and its Specification must be set aside because her company commander's order "not to write any more checks" was overly broad. We disagree and hold that the order was not "so broadly restrictive of a private right" of the appellant so as to be "arbitrary and illegal." *United States v. Wilson*, 12 U.S.C.M.A. 165, 166, 30 C.M.R. 165, 166, 1961 WL 4416 (1961).

JUDGED BECAUSE THE RECORD OF THE DUBAY HEARING IS MISSING SEVERAL EXHIBITS CONSIDERED BY THE MILITARY JUDGE IN MAKING PV2 JAMES' COMPETENCY DETERMINATION, SPECIFICALLY, EXTENSIVE RECORDS OF PROCEEDINGS IN THE [sic] PV2 JAMES' SECOND COURT-MARTIAL, AND POSSIBLY PV2 JAMES' MEDICAL RECORDS.

SUPPLEMENTAL II

THE MILITARY JUDGE ERRED WHEN SHE DENIED THE DEFENSE MOTION FOR A NEW SANITY BOARD BECAUSE THE FIRST SANITY BOARD ORDERED BY THIS COURT SUFFERS FROM POTENTIAL BIAS, CONFLICT OF INTEREST, AND WAS NOT CONDUCTED IN A THOROUGH MANNER AS CONTEMPLATED BY THIS COURT'S ORDER, RENDERING THAT SANITY BOARD DEFECTIVE.

SUPPLEMENTAL III

THE APPLICATION OF ARTICLE 57(a)(1), 10 U.S.C. § 857(a)(1), VIOLATES THE *EX POST FACTO* CLAUSE OF THE CONSTITUTION WITH RESPECT TO APPELLANT. *See United States v. Gorski*, 47 M.J. 370 (1997). *See* (Record at convening authority's action) (offenses

occurred on or about 19 December 1994 to on or about 27 September 1995; appellant was sentenced on 13 June 1996; fourteen days after sentence was announced occurred on 27 June 1996; the convening authority acted on 3 October 1996.)

SUPPLEMENTAL IV

CHARGE III AND ITS SPECIFICATION SHOULD BE SET ASIDE AND DISMISSED BECAUSE IT IS BASED ON A COMMANDER'S ORDER TO NOT WRITE ANY MORE CHECKS THAT IS OVERLY BROAD.

3. The appellant asserts that she was deprived of due process of law and a speedy trial because her court-martial commenced nearly a year after the date of her last offense.

4. We specifically reject the appellant's contention that the R.C.M. 706 sanity board was in any way defective or that the psychiatrist who conducted it was anything other than impartial.

5. *See* UCMJ art. 57(a), 58b; National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, 110 Stat. 462–63 (1996).

Whether an order is lawful is a question of law that we review de novo. *See United States v. Padgett*, 48 M.J. 273, 277 (1998). The facts, as set forth in the providence inquiry and stipulation of fact, are that the appellant's commander ordered the appellant on or about 14 August 1995 to cease writing checks. At the time the order was given, the Criminal Investigation Command (CID) was investigating the appellant for writing numerous worthless checks to the Army & Air Force Exchange Service (AAFES) and civilian commercial establishments dating from December 1994 to the time frame of the company commander's order.

As correctly stated by the appellee, the order did not prohibit the appellant from withdrawing money from her bank through the use of an automatic teller machine or by walking into her bank, nor did the order foreclose the appellant's ability to pay her bills through the use of money orders or by military allotment. Given the extremely large number of worthless checks that the appellant wrote on her accounts at military and private banking institutions, it was apparent that she was unwilling to manage a checking account. We have no difficulty in finding a sufficient military nexus to the commander's order to find the order lawful, and we do not find the order to have been "unduly restrictive" of the appellant's personal liberty. *United States v. Blye*, 37 M.J. 92, 94 (C.M.A.1993).

In addition, our dissenting brother asserts that the finding of guilty of Charge III and its Specification must be set aside, not because of the order's scope, but because the appellant may not be punished for both disobedience of the order and the substantive violation of the law, to wit: writing worthless checks. We disagree with our dissenting brother's analysis and conclusion.

Our superior court in *Padgett*, 48 M.J. at 278, stated that "a commander may not issue an order to obey the law and then punish a servicemember for both the substantive violation of the law and disobedience of the order." The court cited paragraph 14c(2)(a)(iii), Part IV, of the Manual for Courts–Martial, and quoted language there-

from in support of its position: "Disobedience of an order ... which is given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit, is not punishable under this article." The court in *Padgett* evaluated the order to determine the purpose for which the order was given.

An order "purporting to regulate personal affairs is not lawful unless it has a military purpose." *Padgett*, 48 M.J. at 276. A military purpose includes "all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service." *Manual for Courts–Martial, United States* (1995 ed.), Part IV, para. 14c(2)(a)(iii).

We hold that the order in this case had a valid military purpose and was not given to improperly escalate punishment. The appellant's commander ordered the appellant to cease writing checks altogether. She did not order the appellant to cease writing "bad checks." In other words, the commander did not merely purport to order the appellant to obey the law. The order had a preventive and protective function. As stated previously, CID was investigating the appellant for writing worthless checks at the time the order was given. The appellant had checking accounts at military and private banking institutions and negotiated over 100 bad checks at AAFES and civilian commercial establishments from December 1994 to August 1995. The company commander attempted to prevent the appellant from engaging in further conduct which would negatively impact the appellant, the unit, AAFES, civilian commercial establishments, and military and private banking institutions. The order was necessary to promote the morale and discipline of the unit and was directly connected with the maintenance of good order in the service.

The appellant's direct defiance of her commander's order constitutes the "ultimate offense" in this case, and, as such, is "separately chargeable and separately punishable"

from the worthless check offenses. *United States v. Pettersen,* 17 M.J. 69, 72 (C.M.A. 1983).

## DECISION

The findings of guilty and the sentence are affirmed. Our resolution of the *Gorski* issue in this case is referred to The Judge Advocate General who will determine the amount of relief, if any, to which the appellant is entitled, subject to any setoffs that may pertain under applicable law and regulations. The case need not be returned to this court for further review of the *Gorski* issue.

KAPLAN, Judge, concurring in part and dissenting in part:

I join my brothers in their resolution of all issues in this appeal except as to Supplemental Assignment of Error IV. In this assignment of error, the appellant has claimed that the guilty finding as to Charge III and its Specification, alleging disobedience of her commander's order "not to write any more checks," must be set aside because the order was overly broad. I would dismiss this charge and specification, but for a different reason. The appellant was pending charges for writing checks with insufficient funds on 14 August 1995 when her commander ordered her to cease writing all checks. In effect, the order constituted an order to cease violating the law, i.e., Article 123a, UCMJ. Between 14 August and 27 September 1995, the appellant wrote additional checks with insufficient funds and was appropriately charged and convicted of those offenses. As our superior court has recognized, "[A] commander may not issue an order to obey the law and then punish the servicemember for both the substantive violation of the law and disobedience of the order." *United States v. Padgett,* 48 M.J. 273, 278 (1998); *see also United States v. Bratcher,* 18 U.S.C.M.A. 125, 128, 39 C.M.R. 125, 128, 1969 WL 5928 (1969) ("[A]n order to obey the law can have no validity beyond the limit of the ultimate offense committed."). I would set aside the findings of guilty as to Charge III and its Specification, reassess the sentence utilizing the criteria of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), and

affirm the sentence as approved by the convening authority.