UNITED STATES, Appellee,

v.

Specialist Kevin L. BARROWS, United States Army, Appellant.

ARMY 9600845.

U.S. Army Court of Criminal Appeals.

21 July 1998.

For Appellant: Captain Arden B. Levy, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Michael E. Hatch, JA (on original brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Holly S.G. Coffey, JA; Captain Arden B. Levy, JA (on supplemental brief).

For Appellee: Captain Troy A. Smith, JA (argued); Colonel Joseph E. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA; Major Lyle D. Jentzer, JA (on original and supplemental brief).

Before EDWARDS, Chief Judge,
KAPLAN and GONZALES, Appellate
Military Judges.

## OPINION OF THE COURT

GONZALES, Judge:

A general court-martial panel composed of officer members found the appellant guilty, contrary to his pleas, of disobeying a lawful order issued by a superior commissioned officer, failing to obey another lawful order, and two specifications of aggravated assault with a dangerous means in violation of Articles 90, 92(2), and 128(b)(1), Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892(2), and 928(b)(1) (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1.

Before this court, the appellant asserts in his Article 66, UCMJ, appeal that the military judge erred by failing to instruct the panel on the defense of mistake of fact as to all offenses. He further contends that the evidence is legally and factually insufficient to support each finding of guilty. Finally, he asserts that he is entitled to recover that amount of pay and allowances that were for-feited illegally between 23 May 1996 and the date of the convening authority's action on 15 January 1997, by the *ex post facto* application of Article 57(a)(1), UCMJ. We disagree with all three contentions.

## FACTS

On 28 July 1993, Ms. Nancy Dobies, an Army community health nurse, gave the appellant his preliminary preventive medicine counseling after he was initially diagnosed as having the Human Immunodeficiency Virus (HIV) antibody, a viral condition recognized as the causative agent for the Acquired Immune Deficiency Syndrome (AIDS) disease. At this session, she advised him that a second blood sample was needed to confirm this diagnosis. In the meantime, she told him not to have sexual contact with anyone and not to donate any blood, organs, sperm, or tissue.

After the appellant's HIV status was confirmed through the laboratory testing procedures supervised by Walter Reed Army Medical Center [hereinafter WRAMC], Ms. Dobies met with the appellant and his company commander, Captain (CPT) Peter Taft, on 10 September 1993. At this meeting, Ms. Dobies told the appellant that his status as HIV-positive had been confirmed. She explained that sexual abstinence was the best and safest method to prevent the transmission of the virus. However, if he chose to have sexual contact with someone, he could not do so without first informing that person of his HIV infection. She also told him to use a condom should any sexual intercourse occur. She further advised him that the virus would eventually develop into AIDS and that he would be sent to WRAMC every six months for a "stage" status report on his T-lymphocyte (T-cell) count and immune system condition. At the time, the appellant was at Stage 1 of six possible stages.[1]

---

1. Stages 1 and 2 are the earliest stages of infection and are characterized by the presence of the HIV antibody; however, there are generally no symptoms or clinical evidence of immuno-incompetence because the T-cell count is in a healthy range. At Stages 3 through 5, the T-cell count begins to fall and the immune system begins to show signs of deterioration, culminating in the body's inability to resist infection. At Stage 6, the T-cell count is very low and AIDS develops. It is normal for a person to remain at Stages 1 and 2 and feel healthy for two to three years. When persistent T-cell count is less than 300 cells per cubic millimeter of blood for more than one month without any other demonstrable cause, the individual has developed immunological deficiency. *See generally,* Army Reg. 600–110, PERSONNEL-GENERAL· IDENTIFICATION, SURVEIL-

Ms. Dobies gave CPT Taft the standard HIV counseling form to discuss with the appellant. She told CPT Taft that the appellant would go to WRAMC every six months, could not be deployed overseas for any length of time, and could not be stationed overseas.

Captain Taft returned to his B Company, 41st Engineer Battalion office with the appellant and, using the counseling form Ms. Dobies gave him, informed the appellant of his responsibilities as an HIV-infected soldier. Captain Taft read the following summary of counseling, which included the so-called HIV "safe-sex" order, to the appellant:

I have been advised that you were counseled by Preventive Medicine personnel concerning your diagnosis of HIV positivity, the risk this condition poses to your health, as well as the risk you pose to others. You were advised by medical personnel as to necessary precautions you should take to minimize the health risk to others as a result of your condition. While I have great concern for your situation and needs, in my capacity as a commander, I must also be concerned with, and ensure the health, welfare, and morale of the other soldiers in my command. Therefore, I am imposing the following restrictions:

a. You will verbally advise all prospective sexual partners of your diagnosed condition prior to engaging in any sexual intercourse. You are also ordered to use condoms should you engage in sexual intercourse with a partner.[2]

b. You will not donate blood, sperm, tissue, or other organs since this virus can be transmitted via blood and body fluids.

c. You will notify all health care workers of your diagnosed condition if you seek medical or dental treatment, or accident requires treatment. If you do not understand any element of this order, you will address all questions to me. Failure on your part to adhere to your Preventive

Medicine counseling or the counseling I have just given you will subject you to administrative separation and/or punishment under the UCMJ, as I see fit.

Captain Taft allowed the appellant to read the summary before they both signed and dated the form authenticating their understanding of the reason for the counseling session. Captain Taft then secured the form in his locked wall locker. It was later placed in the company's safe.

During the next two years, the appellant changed company commanders three times. In late September 1993, CPT Taft relinquished command of B Company to CPT Stein. Sometime in early 1995, the appellant was reassigned within the battalion to Headquarters and Headquarters Company (HHC), where CPT Jarvis was in command. On 23 February 1995, CPT Matthew O. Snyder assumed command of HHC. None of the appellant's subsequent three commanders repeated the same order that CPT Taft gave the appellant until CPT Snyder did so in December 1995, after all of the offenses had been committed.

One year before, in December 1994, the appellant met JS and ST. He had consensual sexual intercourse with both women on different occasions in January 1995. With JS, he wore a condom, but he did not inform her about his HIV status beforehand. He also did not inform ST and with her he did not use a condom. In March 1995, the appellant met Private First Class (PFC) RS, another member of his company. He had consensual sexual intercourse with her on multiple occasions from May to November 1995. He never informed her about his HIV status during this time period and, although in the initial three months of their relationship he wore a condom during sexual intercourse, he stopped doing so thereafter.[3]

Ms. Dobies counseled the appellant seven times and had numerous conversations with

---

LANCE, AND ADMINISTRATION OF PERSONNEL INFECTED WITH HUMAN IMMUNODEFICIENCY VIRUS (HIV), para. 2–1b (22 Apr. 94). The appellant remained at Stage 1 between 10 September 1993 and his court-martial on 9 May 1996.

2. It is this portion of the "safe-sex" order that formed the basis for the two convictions under Articles 90 and 92(2), UCMJ, respectively.

3. The appellant was found guilty of two aggravated assaults against ST and PFC RS, but not guilty of aggravated assault against JS.

him over the telephone between September 1993 and December 1995. In July and November 1995, the appellant expressed to Ms. Dobies and another nurse his doubt that he was HIV-positive because he was feeling "so well" and because his T-cell count had in fact increased after a slight decrease. Ms. Dobies assured him of his continued HIV status and that, despite being HIV-positive, he would feel very healthy while in Stage 1. She expressed a hope that he would remain at this stage for several years. Nevertheless, the appellant was retested and on 26 December 1995, the results confirmed the appellant's status again as HIV-positive.

Before the confirmation test was performed, however, on 1 December 1995, the appellant expressed to one of his friends, as they were preparing for an evening out-on-the-town, that he did not need to take along a condom, as his friends were planning to do, because, "I have AIDS anyway. I don't give a fuck." Three days later, he told PFC RS that he was HIV-positive. On 7 December, he signed a sworn statement to a special agent of the Criminal Investigation Command (CID) that he understood that the HIV counseling he had received from CPT Taft was an order. He also acknowledged that his first sergeant told him in June or July 1995, during the appellant's sexual relationship with PFC RS, to use a condom whenever he engaged in sexual intercourse.

The appellant did not testify on the merits at his trial. Nevertheless, the defense requested an instruction on the defense of mistake of fact as to all offenses. The defense based this request on the appellant's mistaken belief that (1) CPT Taft's "safe-sex" order was no longer valid after CPT Taft departed as company commander and none of the appellant's subsequent commanders had renewed the order, and (2) the appellant did

not have the means to cause death or grievous bodily harm because he believed he was wrongfully diagnosed as being HIV-positive.[4] The military judge denied the request stating, "I don't believe that ... that particular matter has been raised [by the evidence] and I'm not going to give the instruction."

The findings and the sentence were announced on 9 May 1996. The dates of the offenses for which the appellant was convicted all occurred during 1995, prior to the 1 April 1996 effective date of the forfeiture and reduction amendments to Article 57(a)(1), UCMJ; Pub.L. No. 104–106, Title XI, § 1121, 110 Stat. 462. The appellant was a Specialist (E4) with over six years of service on 9 May 1996. He and his appellate defense counsel together allege, in three separate affidavits submitted as appellate exhibits, that: (1) the appellant has not received any pay since the date of his court-martial due to the illegal collection of the adjudged forfeitures prior to the date of the convening authority's action; (2) the appellant initially contacted the Defense Finance and Accounting Service (DFAS) office at Fort Drum, New York, on 2 April 1998, and then submitted a written request for reimbursement on DD Form 827, Application For Arrears In Pay, on 23 April 1998; (3) DFAS officials have neither approved nor denied this request as of 26 May 1998; and (4) the amount of pay, including allowances, the appellant alleges is due him is $14,829.79.

## DISCUSSION

### a. The Law

■ It is a defense to an offense that the accused held, as a result of mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them to be, the accused would

---

4. In an Article 39(a), UCMJ, session held at the beginning of trial to resolve a motion to suppress evidence, CPT Snyder, the appellant's current company commander, testified that the appellant told him that "he felt he was not positive or that there was a possibility that he wasn't positive, because of a civilian test that he had taken." Even though CPT Snyder testified later on the merits as a defense witness, the defense never sought to have CPT Snyder again present, explain, or elaborate on the civilian test which

could have supported the appellant's mistake of fact defense. When the appellant testified during sentencing, his defense counsel asked him why he told Ms. Dobies that he felt he was not HIV-positive. The appellant did not mention in his response the taking, or the results of, any civilian test, HIV or otherwise, as part of his reasoning. Under our Article 66, UCMJ, fact finding powers, we conclude that the appellant never took a civilian HIV test, or if he did, it did not indicate that he was HIV-negative.

not be guilty of the offense. Rule for Courts–Martial 916(j) [hereinafter R.C.M.]. This special defense is known as mistake of fact. *United States v. Gillenwater,* 43 M.J. 10, 13 (1995).

■■■ A military judge has the affirmative duty to instruct on all special defenses that are reasonably raised by the evidence. *United States v. Hensler,* 44 M.J. 184, 187 (1996). Any doubt whether the evidence is sufficient to require an instruction should be resolved in favor of the accused. *United States v. Steinruck,* 11 M.J. 322, 324 (C.M.A.1981). The test for whether a defense is reasonably raised, such that a military judge must instruct on it, is whether the record contains some evidence, without regard to its source or credibility, upon which the panel may rely, if it so chooses. R.C.M. 920(e) discussion; *United States v. Brown,* 43 M.J. 187, 189 (1995). The test for reviewing a military judge's failure to give a defense-requested instruction is prejudicial error. *Gillenwater,* 43 M.J. at 13; *United States v. McMonagle,* 38 M.J. 53, 61 (C.M.A.1993).

### b. Mistake of Fact and the Validity of the Order

■■■ Assuming, arguendo, that the issue of the continued validity of CPT Taft's "safe-sex" HIV order is not a question of law, it is well settled that a valid order must be worded so as to make it specific, definite, and certain; it must relate to military duty; it may not conflict with a statutory or constitutional right of the person receiving the order; and it may not be overly broad in scope or impose an unjust limitation on personal affairs. MANUAL FOR COURTS–MARTIAL, UNITED STATES, (1995 ed.), Part IV, para. 14c(2)(a) [hereinafter MCM, 1995].

After *United States v. Womack,* 29 M.J. 88, 90 (C.M.A.1989) and *United States v. Stewart,* 29 M.J. 92 (C.M.A.1989), the validity of HIV "safe-sex" orders can no longer be questioned. The military has a legitimate interest in limiting the sexual contact of soldiers diagnosed as HIV-positive with others in order to prevent the spread of that condi-

tion. *United States v. Dumford,* 30 M.J. 137, 138 (C.M.A.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). It is a public duty of the highest order. *Id.* at n. 2.

Captain Taft's "safe sex" order referred four times to the appellant's diagnosed condition as the basis for the order. The appellant acknowledged, during his initial counseling session, that he understood preventive medicine measures were necessary to preclude the transmission of the HIV to others. These measures remained necessary as long as the appellant was an HIV-infected soldier. The order requiring the appellant to adhere to these preventive medicine measures remained valid as long as the appellant was a soldier on active duty. The appellant was both.

Captain Taft's departure as the appellant's company commander had no effect on the continued necessity of these preventive medicine measures and, consequently, no effect on the order's continued validity. The appellant never questioned the continued validity of CPT Taft's order with any of his subsequent commanders. His order was never rescinded or modified by any of these commanders. The order remained valid and was disobeyed at the appellant's peril. *United States v. Nieves,* 44 M.J. 96, 98 (1996).[5]

Although it is true that none of the appellant's subsequent commanders repeated or reissued the "safe-sex" order to him, we attach greater significance to the fact that the record is devoid of any evidence that indicates how CPT Taft's departure and the failure of subsequent commanders to repeat the order affected the appellant's state of mind as to the continued validity of the order. Any assertion that these circumstances above caused or may have caused the appellant to honestly believe that the order was no longer valid is simply speculation. Under these circumstances, we find there was no evidence upon which the panel could rely for a defense of mistake of fact, even if it so desired. Consequently, we hold that the military judge did not commit error in refusing

---

5. All persons in the military service are required to strictly obey and promptly execute the legal orders of their lawful seniors. Army Reg. 600–

20, PERSONNEL-GENERAL: ARMY COMMAND POLICY, para. 4–2 (30 Mar. 1988).

to instruct the panel on this defense as to the violation of both orders.

Before departing from this issue, we note that the 11 March 1988 edition of AR 600–110 was in existence at the time the appellant was diagnosed as HIV-positive and when CPT Taft issued his "safe-sex" order. Paragraph 2–17 of this regulation required the company commander to document on a general counseling form the giving and receiving of the "safe-sex" order. It also required that, upon the reassignment of the HIV-infected soldier, the counseling form was to be forwarded to the gaining commander in an envelope marked "TO BE OPENED BY ADDRESSEE ONLY." However, no regulatory guidance was provided for the accountability of the counseling form when the company commander, rather than the HIV-infected soldier, experienced a permanent change of station (PCS).

Army Regulation 600–110 was reissued effective 22 April 1994 and, logically, it provided that the counseling form passed to the new commander when the previous commander PCS'd. Although not argued at trial or on appeal, paragraph 2–17 of the reissued regulation requires the successor commander to "counsel the HIV-infected soldier in the same manner as that prescribed for new identified HIV-infected soldiers." Arguably, this new requirement recognized the expiration of the original order, when the commander who issued it relinquished command, thus requiring the successor commander to continue the order's validity by reissuing it. We find, however, that the purpose of this provision is to ensure the presence of a commander who has issued the order as a witness in any local administrative or judicial proceeding occasioned by the disobedience of the order. In lieu of recalling the original company commander from perhaps some distant location to testify at government expense, the current commander will always be readily available at no expense.[6] Having concluded this, we also reject any notion that this provision would permit the multiple charging of violations of the same order issued by the original and successive commanders.

c. Mistake of Fact and Aggravated Assault

Turning now to the defense of mistake of fact as to the aggravated assault charges, we find that such a defense does not apply to the aggravated assault upon ST. This assault occurred in January 1995, and we have previously found, in accordance with our fact finding powers, that the appellant did not begin to express doubts about his HIV-positive status until six months later.

■ As to the aggravated assault upon PFC RS between May and November 1995, the testimony of Ms. Dobies is sufficient to be some evidence of the appellant's honest mistaken belief that he was wrongfully diagnosed as HIV-positive. If the panel determined that this mistaken belief was also reasonable under all the circumstances, the appellant could not have been found guilty of aggravated assault upon PFC RS.[7] We find that the military judge erred in not giving the mistake of fact instruction.

■ However, we must test this error for prejudice to the appellant. Ms. Dobies told him he was HIV-positive based on his two separate blood samples. She never suggested that he was not HIV-positive nor did anyone else. He went to WRAMC at least three times for staging updates and knew he was at Stage 1. Ms. Dobies explained that his feeling fine and having T-cell counts of 553, 605, and 545 were consistent with being in Stage 1, not consistent with being HIV-negative. The appellant had been stationed at Fort Drum for thirty months before CPT Taft issued his order. His assignment continued to be stabilized there for an additional sixteen months before the offenses occurred. Although he had deployed to Panama and Somalia before his diagnosis, he never deployed overseas thereafter because of his HIV-positive status. Finally, and more significantly, the reason the appellant provided in his sworn statement for having unprotected sexual intercourse with PFC RS was because he was "infatuated over her and she

---

6. For example, in this case, CPT Taft was recalled from Fort Lewis, Washington, to testify at the appellant's trial at Fort Drum, New York (N.Y.), as the person who issued the order.

7. The appellant's mistaken belief must be honest and reasonable because an aggravated assault under Article 128(b)(1), UCMJ, is a general intent crime.

made me feel happy and really good."[8] He did not allege that it was because he believed he was wrongfully diagnosed as being HIV-positive.

Under these circumstances, we find that the appellant's mistake of fact, even if honest, was definitely not reasonable. Accordingly, we hold that the military judge's error in refusing to instruct the panel on the defense of mistake of fact as to the aggravated assault upon PFC RS was not prejudicial. UCMJ art. 59(a).

### d. Sufficiency of the Evidence

The test for legal sufficiency is whether a reasonable factfinder, viewing the evidence in the light most favorable to the prosecution, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). After carefully reviewing the record, we find that the evidence satisfies both tests.

### e. Illegal Forfeitures

On 18 November 1997, the Court of Appeals for the Armed Forces held that the forfeiture amendments to Article 57 of the Uniform Code of Military Justice violated the *Ex Post Facto* Clause of the Constitution with respect to any accused tried for offenses that occurred before 1 April 1996, the effective date of the amendment. *United States v. Gorski*, 47 M.J. 370 (1997). The amendment provided that the effective date of forfeitures would be the earlier of the date of the convening authority's action or fourteen days after the date the sentence was adjudged. In those cases affected by *Gorski*, the effective date of forfeitures remains the same as it was before the amendment; specifically, the date of the convening authority's action.

The illegal application of Article 57(a)(1), UCMJ, does not impact the legality and exe-

cution of an approved sentence, which would require review under Article 66, UCMJ. The appropriate remedy for the illegal application of Article 57(a)(1), UCMJ, is administrative in nature. In this regard, this court previously set forth four requirements to establish the existence of a case or controversy amenable to judicial relief based on the unlawful application of Article 57(a)(1), UCMJ. *United States v. Messner*, 48 M.J. 637, 638–39 (Army Ct.Crim.App.1998). Those requirements are: "(1) an illegal forfeiture of pay was actually executed pursuant to operation of Article 57(a), UCMJ; (2) the petitioner requested reimbursement through Defense Finance and Accounting Service (DFAS) channels; (3) DFAS denied administrative relief; and, (4) the petitioner is entitled to judicial relief in a specific dollar amount."

We find that the appellant comes under the protection of *Gorski* because all of his offenses were committed prior to 1 April 1996. Consequently, his forfeitures were effective on 15 January 1997, the date of the convening authority's action, rather than 23 May 1996, the date that was fourteen days after the sentence was adjudged. We further find that the appellant has failed to satisfy *Messner*. Specifically, as to the third requirement, the appellant has not shown that his request has been administratively denied by DFAS. With respect to the fourth *Messner* requirement, although the appellant has stated a specific dollar amount, we make no finding that this is the correct amount he is entitled to recover under *Gorski*. Finally, we find and so hold that the appellant has preserved, for further action by this court, if necessary, his *Gorski* issue.

The findings of guilty and the sentence are affirmed.

Acting Chief Judge EDWARDS and Judge KAPLAN concur.

---

8. In his sworn statement to CID, the appellant denied having unprotected sexual intercourse with any person, except for PFC RS. This denial reinforces our view that the defense of mistake of fact does not apply to the aggravated assault upon ST.