# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class RASHEEN K. MCCULLERS**
**United States Army, Appellant**

ARMY 20120931

Headquarters, U.S. Army Aviation and Missile Command
Stephen A. Castlen, Military Judge
Colonel David T. Crawford, Staff Judge Advocate

For Appellant: Captain Brian J. Sullivan, JA; Ms. Cathlene Y. Banker, Esquire (on brief); Captain Brian J. Sullivan, JA; Ms. Cathlene Y. Banker, Esquire (on reply brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Sean Fitzgibbon, JA; Captain Timothy C. Erickson, JA (on brief).

28 October 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of violating a lawful order, assault consummated by battery (two specifications), assault consummated by battery against a child under the age of sixteen, assault upon a person serving as civilian law enforcement, and child endangerment in violation of Articles 92, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 928, 934 (2006) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for forty-eight months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The

convening authority disapproved the forfeitures and approved the remainder of the adjudged sentence.[1]

Appellant's case is now pending review before this court pursuant to Article 66, UMCJ. Appellant raises seven assignments of error, two of which merit discussion and one which merits relief. Appellant personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits discussion or relief.

## BACKGROUND

In 2011, appellant and his wife, LM, had been married for eleven years. LM had three children, two of whom were the natural children of appellant. During 2009 through 2011, appellant physically abused LM. Appellant was convicted of separate assaultive acts including hitting LM in the face, biting LM, and choking LM. Appellant was also convicted of assaulting his son JMM, as well as child endangerment for assaulting LM while she was driving and causing her to drive erratically while appellant's daughter JM was inside the car. Further, appellant was convicted of assaulting a police officer who responded to a report of domestic abuse at his family home.

After appellant assaulted LM in April 2011, appellant's commander, Major (MAJ) WH, issued appellant a lawful order on 5 May 2011 prohibiting him from having any contact with LM. Appellant was charged with and found guilty of, *inter alia*, failure to obey the order on divers occasions between May 2011 and December 2011.

At his court-martial, appellant testified that on 16 June 2011, he met with his commander after a civilian court appearance that same day. Appellant testified that he informed his commander that civilian charges against him arising from a domestic abuse allegation had been dropped but the court had ordered appellant to attend marriage counseling with LM. Appellant further explained that based on this interaction with MAJ WH that day he believed that MAJ WH rescinded the no contact order. Specifically, appellant testified that he asked MAJ WH whether ". . . [w]e could close out the counseling for the no contact order." Appellant asserted MAJ WH responded "[g]ot it. I'll take care of it. You're good to go." This conversation led appellant to believe his commander had rescinded the order.

Major WH denied rescinding the no contact order and testified he did not recall whether or not appellant was going to court-ordered marriage counseling.

---

[1] The convening authority waived automatic forfeitures for six months for the benefit of appellant's dependents.

At trial, it was established appellant contacted his wife several times after he received the no contact order. This was due, at least in part, to appellant's own testimony wherein he admitted he went with LM to marriage counseling and regularly picked up LM and his children in his car and drove them to his house to do laundry.

In his instructions to the panel, the military judge did not explain the defense of mistake of fact with respect to appellant's alleged violation of MAJ WH's no-contact order, nor did defense counsel request such instruction.

## LAW AND DISCUSSION

*Failure to Instruct on Special Defenses*

Appellant argues on appeal the military judge erred by failing to instruct the panel, *sua sponte*, on mistake of fact, a special defense reasonably raised by the evidence. We agree.

Allegations of mandatory instruction omissions are reviewed under a de novo standard of review. *United States v. Bean*, 62 M.J. 264, 266 (C.A.A.F. 2005); *United States v. Forbes*, 61 M.J. 354, 357 (C.A.A.F. 2005). When the instructional error raises constitutional implications, the error is tested for prejudice using a "harmless beyond a reasonable doubt" standard. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (citing *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *Kreutzer* 61 M.J. at 298 (quoting *United States v. Kaiser,* 58 M.J. 146, 149 (C.A.A.F. 2003)).

A military judge is required to instruct the members on affirmative defenses "in issue." Rule for Courts-Martial [hereinafter R.C.M.] 920(e)(3). A matter is considered "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." *See* R.C.M. 920(e) discussion. Any doubt whether an instruction should be given should be resolved in favor of the accused. *United States v. New*, 50 M.J. 729, 745 (C.A.A.F. 1999) (citing *United States v. McMonagle*, 38 M.J. 53, 58 (C.M.A. 1993)).

Notwithstanding the waiver provisions of R.C.M. 920(f), failure to request an instruction required by R.C.M. 920(e)(3) or to object to its omission does not waive the error. *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). A military judge has wide discretion in choosing the instructions to give but has a duty to provide an accurate*,* complete*,* and intelligible statement of the law. *See United States v. Dearing*, 63 M.J. 478, 483 (C.A.A.F. 2006).

"It is a defense to an offense that the accused held, as the result of a mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them to be, the accused would not be guilty of the offense." *United States v. Barrows*, 48 M.J. 783, 786-87 (1999) (citing R.C.M. 916(j)).[2]

In this case, "some" evidence was admitted at trial which members might have relied upon, if they so chose, to establish appellant's asserted mistaken belief that MAJ WH's no-contact order had been rescinded. Appellant testified he met with his commander and discussed the court-ordered marriage counseling as it related to the no-contact order and that their exchange led appellant to believe his commander rescinded the order.[3] Appellant also testified be believed his commander was aware he subsequently interacted with his wife.[4]

Accordingly, it was error not to instruct the panel on the mistake of fact defense, depriving appellant of an instruction on a possible affirmative defense. This instructional deprivation raises due process concerns. *See Wolford*, 62 M.J. at 419 (citing *United States v. Jackson*, 6 M.J. 116, 117 (C.M.A. 1979)). Despite

---

[2] R.C.M. 916(j)(1) provides:

> it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances. However, if the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense.

[3] The crime of disobedience of an order under Article 92(2), UCMJ, contains elements requiring specific intent or knowledge as well as elements requiring only general intent.

[4] We recognize MAJ WH denied informing appellant he was "good to go" or otherwise indicated the no-contact order was no longer in effect. This contradiction of evidence was a matter that should have been properly decided by the fact finder after proper instruction.

4

defense counsel's failure to request the instruction, the military judge should have *sua sponte* provided the instruction.

Under the particular circumstances of this case, using a harmless beyond a reasonable doubt standard, we find the error materially prejudicial to a substantial right of the appellant. Accordingly, we will take appropriate action in our decretal paragraph.

*Ineffective Assistance of Counsel*

In his post-trial affidavit, appellant asserts he was denied effective assistance of counsel at his presentencing hearing in that his defense counsel failed to conduct a proper investigation and present vital military performance and rehabilitation evidence to the panel. Specifically, appellant alleges his defense counsel did not inform him of his right to call soldier witnesses during the sentencing phase of the court-martial, nor did they conduct an adequate investigation to find such witnesses. Appellant also alleges his defense counsel did not tell him he could submit a "good soldier book." *See United States v. Gaskins*, 72 M.J. 225, 228 (C.A.A.F. 2013) (explaining the relevance of a "Good Soldier Book" as mitigation evidence during sentencing).

To establish ineffective assistance of counsel, appellant "bears the heavy burden" of satisfying the two-part test that: "[1]the performance of his counsel was deficient and [2] that he was prejudiced thereby." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). Regarding the first prong, counsel is presumed competent; thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *Weathersby*, 48 M.J. at 670 (citing *United States v. Cronic*, 466 U.S. 648 (1984)).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, [an appellate] court must indulge a strong

5

> presumption that a defense counsel's conduct falls within the wide range of reasonable professional assistance; that is, [an appellant] must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way.

*Strickland*, 466 U.S. at 689 (citations omitted).

"Thus, a court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-691.

To establish prejudice, appellant must show "counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." *Weathersby*, 48 M.J. at 670. This requires appellant to show that the errors had more than "some conceivable effect" on the proceedings, but appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

In response to appellant's allegations, defense counsel submitted affidavits refuting appellant's assertions, stating they attempted to solicit information from appellant for his presentencing case, but appellant was uncooperative. They also stated they informed appellant of his rights. Defense counsel also provided e-mails to and from appellant substantiating their unsuccessful attempts to solicit names from him for his presentencing case. Defense counsel also provided an e-mail from appellant's sister indicating appellant's reticence to tell his family his legal troubles until after his court-martial. While no "good soldier book" per se was admitted, appellant's official military personnel file was admitted into evidence. This 134-page file included appellant's awards, assignment and deployment history, schooling, and evaluations.

Because appellant and counsel filed conflicting post-trial affidavits, we look to whether a post-trial evidentiary hearing is required. *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). After applying the fourth *Ginn* principle, we find a hearing is not required. *Id*. at 248. Assuming appellant's affidavit is "factually adequate on its face . . . the appellate filings and the record as a whole 'compellingly

demonstrate' the improbability of those facts" and we may therefore "discount those factual assertions and decide the legal issues." *Id.*

In making our decision, we find the relevant e-mail and the family affidavits revealing in that they demonstrate both appellant's uncommunicativeness with his defense counsel and his mindset with regard to seeking help during his court-martial. By all accounts except his own, appellant refused to cooperate. Additionally, the military judge reviewed appellant's sentencing rights with him and appellant acknowledged he understood the rights of which he now complains he was denied.

Accordingly, the record as a whole and the appellate filings compellingly demonstrate the improbability of appellant's claim of ineffective assistance of counsel. *Id*. at 248. This court discounts appellant's factual assertions and finds appellant has failed to demonstrate counsel's performance was deficient. We, therefore, find no validity in appellant's ineffective assistance claim.

## CONCLUSION

The findings of guilty to Charge I and its Specification are set aside and that charge and its specification are dismissed.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. Second, although appellant was sentenced by members, here, this factor carries less weight because the remaining offenses "do not address service custom, service-discrediting conduct or conduct unbecoming." *Winckelmann*, 73 M.J. at 16. Third, the gravamen of appellant's misconduct, serious and repeated assaults involving his child, wife, and a law enforcement officer, remains. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

7

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court